[Cite as *In re G.B.*, 2017-Ohio-8759.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

IN THE MATTER OF: G.B., H.B., D.B.   :
:
:   Appellate Case No. 2017-CA-30
:
:   Trial Court Case No. N42430
:
:   (Appeal from Common Pleas Court-
:   Juvenile Division)
:
:

. . . . . . . . . .

O P I N I O N

Rendered on the 29th day of November, 2017.

. . . . . . . . . .

BRIAN T. DANIELS, Atty. Reg. No. 0092404, Assistant Prosecuting Attorney, Greene County Prosecutor's Office, 61 Greene Street, Xenia, Ohio 45385
    Attorney for Appellee-Greene County Children Services Board

SARAH E. MICHEL, Atty. Reg. No. 0087773, 500 East Fifth Street, Dayton, Ohio 45402
    Attorney for Appellant

. . . . . . . . . . . .

TUCKER, J.

**{¶ 1}** Appellant, D.B., biological father of G.B., H.B. and D.B.2, appeals from the judgment of the Greene County Court of Common Pleas, Juvenile Division, granting the Greene County Children Services ("GCCS"), appellee herein, permanent custody of the children.[1] D.B. contends that the evidence does not support the juvenile court's determination that he abandoned the children and that awarding permanent custody to GCCS is in the best interest of the children. He further contends that GCCS did not make reasonable efforts toward reunification. Finally, he contends that the juvenile court abused its discretion by denying his motion for a second extension of temporary custody.

**{¶ 2}** We conclude that the evidence in the record is sufficient to support the court's conclusion that D.B. did abandon the children and that awarding permanent custody of the children to GCCS is in the children's best interest. We further conclude that GCCS did make reasonable reunification efforts including helping D.B. with his case plan objectives. Finally, we find no abuse of discretion with regard to the juvenile court's decision to deny a second extension of temporary custody. Accordingly, the judgment of the juvenile court is affirmed.

## I. Facts and Procedural History

**{¶ 3}** D.B. and the mother, who is not a party to this appeal, have three minor children that are the subject of this action; G.B., born in 2010, H.B., born in 2012 and D.B.2, born in 2013. GCCS initially became involved with the family in 2010 when G.B.,

---

[1] For the sake of clarity, and given that the father and one child have the same initials, we shall refer to D.B. as father, and the child will be referred to as D.B.2.

and another child not the subject of this case, were removed from the parents.   G.B., on this occasion, was ultimately returned to the care of the mother.

{¶ 4} Of relevance to this appeal, in March of 2015, GCCS filed a complaint alleging that the children were neglected and dependent based upon the claim that mother, with whom they were residing, was abusing heroin and not providing care for the children.   Further, the home was found to be unfit, and the children were observed to have bruising, "chunks of hair missing," and bug bites all over their bodies.   Dkt. No. 61. The children were removed and temporary custody was awarded to the agency.   An adjudicatory hearing was conducted in June 2015, however, neither parent appeared. The children were found to be neglected and dependent, and a case plan was established for both parents.   D.B.'s plan required him to undergo a drug and alcohol assessment; submit to random drug testing; obtain and maintain suitable housing; and attend domestic violence counseling.

{¶ 5} On March 4, 2016, GCCS filed a motion for permanent custody.   A hearing was conducted on August 24, 2016 and September 23, 2016.   The juvenile court found that an award of permanent custody to the agency was in the best interest of the children. D.B. appeals.

## II. Permanent Custody Factors and Standard of Review

{¶ 6} R.C. 2151.414(B)(1) requires a trial court to conduct a two-pronged analysis to determine whether to grant permanent custody of a child to a children services agency. In doing so, the court must first determine by clear and convincing evidence that any one of the factors enumerated in R.C. 2151.414(B)(1)(a)-(e) exists. Those factors include: "(a)

\* \* \* [T]he child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents. (b) The child is abandoned. (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody. (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999. (e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state." R.C. 2151.414(B)(1)(a)-(e).

{¶ 7} Then the court must determine by clear and convincing evidence that an award of permanent custody to the agency is in the child's best interest. R.C. 2151.414(D) requires a juvenile court to consider certain factors in determining whether a child's best interests would be served by granting a motion for permanent custody. Those factors include: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors listed under R.C. 2151.414(E)(7) to (11) apply.

{¶ 8} The Ohio Supreme Court has defined "clear and convincing evidence" as

"[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 104, 495 N.E.2d 23 (1986). On review, we give the trial court's final determination "the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Alfrey*, 2d Dist. Clark No. 01CA0083, 2003–Ohio–608, ¶ 102. Thus, an appellate court will not reverse the judgment of the trial court if there is some competent, credible evidence going to all the essential elements of the case. *Id.* at ¶ 104.

### III. Best Interest of the Children

{¶ 9} D.B.'s first assignment of error states the following:

THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO GREENE COUNTY CHILDREN SERVICES BECAUSE THE AGENCY FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT PERMANENT CUSTODY WAS IN THE BEST INTEREST OF THE CHILDREN.

{¶ 10} D.B. contends that the evidence does not support the conclusion that a grant of permanent custody to GCCS is in the best interest of the children. He also appears to contest the trial court's finding that he abandoned the children because he argues that GCCS prevented him from exercising visitation.

**{¶ 11}** We begin with the issue of abandonment. R.C. 2151.011(C) provides: "a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." This court has held that this presumption is rebuttable. *In re Custody of C.E.*, 2d Dist. Champaign No. 2005–CA–11, 2005–Ohio–5913, ¶ 12. In *C.E.*, we found the presumption rebutted where a mother left the state and avoided contact with her children in order to prevent her ex-husband, who had committed domestic violence, from finding her. *C.E.* at ¶ 15. We also stressed that no evidence had been presented contradicting the mother's testimony about why she failed to contact her children. *Id.*

**{¶ 12}** In this case, there is no dispute that the last time father had visitation with the children was in April 2015. Thus, the statutory presumption of abandonment was triggered. However, D.B. contends the presumption was rebutted because the visitation failure was caused by the agency's unwillingness to facilitate visits. We disagree.

**{¶ 13}** According to the record, visitation was attempted following the removal of the children. GCCS made a referral for visitation to the Greene County Visitation Center. However, D.B., other than one visit in April 2015, did not appear for scheduled visits. There is evidence that D.B. refused to attend the scheduled visits because he had outstanding arrest warrants and the Visitation Center was next door to the Sheriff's Department. GCCS thus made a visitation referral to its CARE Unit but it was unable to schedule visitation due to the conflicting schedules of the parties and the fact that D.B. could not be present when mother was visiting.[2] Finally, GCCS made a visitation referral

---

[2] The record shows that a protection order had been issued directing D.B. to stay away

to Erma's House, but visitation did not resume. There is also evidence that D.B. refused to cooperate with the agency and that he failed to attend meetings with the caseworker. D.B. was arrested in mid-2015 due to his outstanding warrants.

{¶ 14} The record shows the ongoing caseworker, Danielle Meyers, was finally able to meet with D.B. during November and December 2015 while he was incarcerated. During these two visits, Meyers reviewed his case plan and discussed referrals. D.B. told Meyers that he would be entering Christopher House, a residential drug and alcohol treatment center, upon leaving jail. D.B. was released from jail after Christmas. He entered Christopher House on January 4, 2016, but this stay was short lived as he left approximately one day after his arrival.

{¶ 15} After he left Christopher House, Meyers attempted to locate and contact D.B. but was unable to do so. She contacted D.B.'s mother but she was unable to provide an address. D.B.'s mother did provide Meyers a telephone number for D.B., but the number did not work. In March 2016, D.B. contacted Meyers by telephone, and informed her that he was living with a friend. Meyers scheduled meetings with D.B. during March and April; however, he cancelled all scheduled meetings. Therefore, Meyers, on three occasions during March and April, went to the address where D.B. claimed to be residing to attempt a home visit. However, she was unable to make contact with anyone in the home, and was forced to merely leave her business card on the door. Meyers was finally able to meet with D.B. at the friend's residence in May 2016. Meyers found the friend, who was also involved with GCCS, unsuitable for the children to be around. At that meeting, D.B. asked Meyers for visitation with the children. Meyers

---

from mother.

informed him that since the children had not seen him for over a year, she would have to discuss visitation with the children's counselors. Meyers, based upon the counselors' recommendations and the fact that father had not made progress on his case plan, did not initiate visitation.

{¶ 16} This evidence supports a finding that D.B. failed to visit with the children for over a year and that the lack of visitation was not caused by agency action. Other than his self-serving statement that the agency was at fault, D.B. does not cite, nor can we find, any evidence to rebut the presumption of abandonment. Thus, we conclude that the record supports the juvenile court's finding of abandonment.[3]

{¶ 17} We next address the question of whether the trial court's finding regarding the best interest of the children was supported by the evidence. The record demonstrates that the children, who were approximately 5, 3 and 2 years old at the time of the last visit with D.B., have no bond with him. There is ample evidence that they are very well-bonded with their foster parents with whom they have resided since their removal in March 2015. The evidence shows that at the time of their removal, all three children were diagnosed with significant emotional problems. G.B. has anxiety and aggression issues. H.B. has a history of self-harming. D.B.2 has aggression and sleep issues. All three have been engaged in counseling while living with their foster parents, and all three have shown improvement. G.B. has shown significant improvement in school and he is involved in soccer, basketball and swimming. Although the children were not old enough to state their wishes with regard to custody, G.B. has indicated that

---

[3] There is evidence in this record upon which the juvenile court could have relied to also find that divisions (a) and (e) of 2151.414(B)(1) were applicable to these children.

he feels his foster home is a safe place, and that he did not feel safe prior to his removal from his parents. The Court Appointed Special Advocate, who testified at the hearing, recommended that the trial court award permanent custody to the agency.

{¶ 18} With regard to the custodial history of the children, the children, as noted, have been in the care of GCCS since March 2015. G.B. has been adjudicated neglected and dependent on two prior occasions and was removed from his parents' custody both times. This is his third adjudication; he was not quite five years old when he was removed in this instance. The other two children were one and two years of age at the time of their removal. They consider their foster parents to be their mother and father. The foster parents are meeting their needs. The evidence demonstrates that these children need a secure permanent placement where they can continue to engage in counseling and have a stable home life. It is clear, as set forth in Part IV below, that D.B. had not made any progress on his case plan so as to be able to properly parent and provide for the needs of the children.

{¶ 19} Based upon this record, we conclude that there is competent, credible evidence upon which the trial court could rely in determining that the best interests of the children mandated an award of permanent custody to GCCS. Accordingly, the first assignment of error is overruled.

### IV. Reasonable Reunification Efforts

{¶ 20} D.B.'s second assignment of error states:

THE TRIAL COURT ERRED IN FINDING THAT GREENE COUNTY CHILDREN SERVICES HAD MADE EVERY REASONABLE EFFORT TO

PREVENT THE REMOVAL OF THE CHILDREN FROM THEIR BIOLOGICAL PARENTS AND/OR FAMILY MEMBERS.

{¶ 21} D.B. claims that the agency did not make a reasonable effort to reunify him with the children.

{¶ 22} "Reasonable efforts" are "[t]he state's efforts to resolve the threat to the child before removing the child or to permit the child to return home after the threat is removed." *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 28, quoting Will L. Crossley, Defining Reasonable Efforts: Demystifying the State's Burden Under Federal Child Protection Legislation (2003), 12 B.U.Pub.Int.L.J. 259, 260. We find the record demonstrates that reasonable efforts toward reunification were made. First, the court made reasonable efforts findings on several occasions. A reasonable efforts finding was made following the adjudication hearing. The magistrate's order stated that the agency had attempted to work with the parents pursuant to their case plans. The magistrate also made a reasonable efforts finding following a July 15, 2016 review hearing. The magistrate stated that the agency had made referrals to substance abuse treatment and encouraged visitation. At that time, the children had been in the custody of GCCS for more than a year and the parents had still failed to engage in services. The trial court also made reasonable efforts findings in its permanent custody decision. We conclude that the record supports these findings. Further, there is evidence that the agency made appropriate referrals during the time they were able to maintain contact with D.B.

{¶ 23} D.B. additionally claims that he made substantial progress on his case plan. However, the record shows that he lacked stable housing during the pendency of this case, and that any prospects for doing so were, at best, speculative. It is clear that D.B.

continued to use drugs during the pendency of the case. He had a positive drug test in May 2016, and he declined a drug test in July 2016, two months prior to the final hearing because, upon his own admission, he was using drugs.

**{¶ 24}** We note that D.B. did enroll at Christopher House for substance abuse treatment. He also claimed that he was engaging in anger management classes that would satisfy the domestic violence counseling portion of his case plan. However, he did not enter treatment until after the August 24, 2016 portion of the permanent custody hearing, more than five months after the motion for permanent custody was filed. D.B. had more than a year in which to engage in drug treatment, and he waited until after the court had already conducted a large portion of the permanent custody hearing before initiating treatment. Thus, based upon these facts, the trial court was not required to give much weight to D.B.'s eleventh hour attempt to begin complying with his case plan. *In the Matter of O'Neal*, 2d Dist. Clark Nos. 97-CA-88, 97-CA-91, 97-CA-87, 1998 WL 801886 (Nov. 20, 1998). Further, there was no evidence that he would be able to obtain stable housing at any point in the foreseeable future. Thus, we conclude that the record does not support D.B.'s claim that he made substantial progress on his case plan.

**{¶ 25}** Based upon our review of the record, we find that GCCS did make reasonable efforts toward reunification but that father simply did not comply. Accordingly, the second assignment of error is overruled.[4]

---

[4] When, as here, an agency seeks, under R.C. 2151.413, permanent custody after the agency has obtained temporary custody, the "reasonable efforts statute, R.C. 2151.419(A)(1), does not directly apply." *In The Matter Of T.S.*, 2d Dist. Greene Nos. 2016-CA-26, 2016-CA-28, 2017-Ohio-482, ¶ 31, citing *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816. The state, nonetheless, must, unless certain statutory exceptions apply, establish that reasonable reunification efforts were made during the "proceedings prior to the termination of parental rights" or, if such efforts were not

## V. Extension of Temporary Custody

{¶ 26} The third assignment of error asserted by D.B. is as follows:

THE TRIAL COURT ERRED IN NOT GRANTING THE PARENTS A SECOND EXTENSION OF TEMPORARY CUSTODY REGARDING THE MINOR CHILDREN.

{¶ 27} R.C. 2151.415(D)(2) provides that a juvenile court may extend a temporary custody order for an additional period of up to six months if it determines by clear and convincing evidence that (1) the additional extension is in the best interests of the child, (2) there has been substantial additional progress on the case plan since the original extension of temporary custody, (3) there has been substantial additional progress since the original extension of temporary custody toward reunifying the child with one of the parents or otherwise permanently placing the child, and (4) there is reasonable cause to believe the child will be reunified with a parent or otherwise permanently placed within the period of extension.[5]   Notably, the statute provides only that the juvenile court may extend the temporary custody order, not that it must do so.  Thus, a juvenile court's decision to grant or deny an extension of temporary custody is reviewed under an abuse of discretion standard.   *In re G.P.*, 5th Dist. Stark Nos. 2013CA00126 and 2013CA00127, 2013–Ohio–4692, ¶ 49.   The term abuse of discretion indicates that the decision of the

---

established in prior proceedings, the state must establish appropriate reunification efforts at the permanent custody hearing.  *In re C.F.*, ¶ 43.  In this case, as noted, findings concerning reasonable reunification efforts were made in prior proceedings and at the permanent custody hearing.

[5] However, temporary custody orders shall not continue beyond two years after the agency filed the initial complaint.   R.C. 2151.353(F).

juvenile court is unreasonable, arbitrary, or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 28} As stated above, the juvenile court found that an award of permanent custody was in the best interest of the children which necessarily implied that an extension of temporary custody was not.   Additionally, in the 17 months between the filing of the complaint and his admission into Christopher House in late August 2016, D.B. had failed to substantially comply with any of the four primary objectives of his case plan.   Further, there was no evidence submitted regarding his compliance with treatment at Christopher House.   While there was evidence that D.B. believed he would complete his treatment by the end of October 2016, there was no evidence to substantiate this claim.   More importantly, it would not be unreasonable to conclude that D.B. would not be able to bond with the children, who do not recognize him as their father, in the time remaining in the statutory period for temporary custody.

{¶ 29} We find no abuse of discretion in the court's decision denying an extension of temporary custody.   Accordingly, the third assignment of error is overruled.


**VI. Conclusion**

{¶ 30} All of D.B.'s assignments of error being overruled, the judgment of the trial court is affirmed.


. . . . . . . . . . . .


DONOVAN, J. and WELBAUM, J., concur.

Copies mailed to:

Brian T. Daniels
Sarah E. Michel
Laura Grissett-GAL
Randall Stump
Hon. Adolfo A. Tornichio