[Cite as *In re A.C.*, 2019-Ohio-4788.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE A.C. | : | |
| | | No. 108236 |
| A Minor Child | : | |
| | | |
| [Appeal by A.C., Father] | : | |

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 21, 2019

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD18900944

---

### *Appearances:*

Wargo Law, L.L.C., and Leslie E. Wargo, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Anthony R. Beery and Cheryl Rice, Assistant Prosecuting Attorneys, *for appellee.*

EILEEN T. GALLAGHER, P.J.:

{¶ 1} Appellant, A.C. ("Father"), appeals an order of the Juvenile Division of the Cuyahoga County Court of Common Pleas (the "juvenile court") granting legal custody of his daughter ("A.C.") to her maternal great-uncle ("Uncle"). Father claims the following three errors:

1. The trial court erred by denying the Father's motion for continuance because the Father had a medical issue, thus, precluding him from testifying at the hearing.

2. The trial court erred by denying the Father's motion for first extension of temporary custody.

3. The trial court erred by denying the Father's request for a new social worker.

4. Because the trial court did not continue the hearing after Father became ill and did not grant the Father's motion for a first extension of temporary custody, it did not have all the competent and credible evidence before it to render a decision to grant permanent custody to the uncle.

{¶ 2} We find no merit to the appeal and affirm the trial court's judgment.

## I. Facts and Procedural History

{¶ 3} In January 2018, the Cuyahoga County Department of Child and Family Services ("CCDCFS" or "the agency") filed a complaint alleging that A.C. was a neglected and dependent child due to her parents' failure to care for her special medical needs. A.C. was born prematurely and remained hospitalized for four months after birth due to a heart condition and problems with her immune system. The complaint for temporary custody further alleged that (1) A.C.'s mother ("Mother") and Father were unwilling to follow medical advice; (2) Mother had untreated mental health and substance abuse issues; and (3) A.C.'s older brother, K.J., was already in the emergency custody of CCDCFS due to Mother's failure to provide for his medical needs. The agency also filed two motions for emergency predispositional temporary custody. Following a hearing in February 2018, the court granted emergency custody of A.C. to CCDCFS, and A.C. was placed in the care

of Uncle. Thereafter, in March 2018, Father filed a motion requesting that legal custody be granted to himself with an order of protective supervision. A magistrate denied the motion. Father objected to the magistrate's decision, and the trial court overruled the objections.

{¶ 4} In July 2018, CCDCFS filed a motion to modify custody and asked the court to grant legal custody of A.C. to Uncle. Prior to a hearing on the motion, Father filed a motion for extension of temporary custody and for removal of the assigned social worker.

{¶ 5} On October 25, 2018, the court held a hearing on the parties' competing motions, beginning with Father's request for the removal of the assigned case worker. Father alleged that extended family members of the assigned case worker, Rosalind Bailey ("Bailey"), were close friends with members of Mother's family, including Uncle. He claimed that "Bailey's cousin Ryan and [Uncle] are very good friends." (Father's motion for first extension of temporary custody and request for a new social worker p. 2.) He further alleged that "Ms. Bailey knows his wife's mother and grandmother and was consequently aware of his wife being on the outs with her family over money," and that he and Mother know Bailey's grandmother and have been in her home. (Father's motion for first extension of temporary custody and request for a new social worker p. 2.)

{¶ 6} Father alleged at the hearing that his stepchild played at Bailey's grandmother's home and that Bailey's grandmother lives down the street from Uncle. (Tr. 6.) Father also alleged that Mother's mother has been friends with

Bailey's grandmother "for years" and that they live in close proximity to each other. (Tr. 6.) Bailey denied these allegations and denied that any of her relatives live anywhere near Uncle. (Tr. 6.) Indeed, Bailey testified that both of her grandmothers are deceased; one grandmother died before Bailey was born and her other grandmother passed away in 2014, long before A.C. was born. (Tr. 16.) Bailey also stated that she does not know any of the individuals named in Father's motion. (Tr. 16.) According to Bailey, Father wanted her removed from the case because he did not like the information she relayed to him from A.C.'s medical providers. She explained:

> So I guess with that information, he didn't want me to be on the case because he didn't like the information that I spoke to him that was given to me from the service providers.

(Tr. 10.)

{¶ 7} Father's lawyer nevertheless argued that Father does not trust Bailey and believes "she has spoken falsely about facts in the case" and, therefore, Father did not feel he could work with her. Counsel argued that Father loves A.C. and "could have done much better if he had a different social worker who [sic] he could trust." (Tr. 19.) Father admitted that he did not work his case plan the way he should have, but asserted his failure to do so was because he did not get along with Bailey. (Tr. 19.) He asked the court to extend temporary custody in order to allow him the opportunity to work on his case plan with a different case worker.

{¶ 8} The magistrate denied Father's motion to remove A.C.'s case worker. Based on the parties' arguments and Bailey's testimony, the magistrate found no

genuine conflict between Bailey and Father. (Tr. 23.) The court, therefore, proceeded to a hearing on CCDCFS's motion to modify the temporary custody of A.C. and award legal custody of A.C. to Uncle.

{¶ 9} Bailey testified that A.C.'s older brother, K.J., was already in the legal custody of Uncle. Therefore, if the court were to grant legal custody of A.C. to Uncle, the siblings would be together. (Tr. 25.) Mother's case plan required her to complete parenting and domestic violence classes, undergo mental health treatment, and demonstrate that she can provide for A.C.'s basic needs. (Tr. 27.) According to Bailey, Mother made no attempt to complete any of these objectives. (Tr. 27.)

{¶ 10} Father's case plan also required him to complete parenting and domestic violence classes, have regular visits with A.C., and complete a psychological assessment through the court psychiatric clinic. Father was given an appointment for the psychological assessment, but he rescheduled it three times and failed to show up for the third appointment. (Tr. 29-30.) The court clinic closed his case pursuant to a policy that limits appointments to no more than three rescheduled appointments, and Father never completed the assessment. (Tr. 29.)

{¶ 11} Bailey testified that the psychological assessment was necessary because (1) the agency received reports that Father used excessive discipline with K.J., who was 11 years old, (2) Father refused necessary medical care for A.C., and (3) Mother and Father failed to obtain proper medical care for K.J., while K.J., who is A.C.'s half-brother, was still in Mother's custody. (Tr. 30.)

{¶ 12} The domestic violence assessment was a necessary component of Father's case plan because Father used excessive discipline on K.J., and the court had issued a no-contact order prohibiting Father from having contact with K.J. (Tr. 32.) There were also concerns that Father was negatively influencing Mother's decisions regarding A.C.'s care. (Tr. 32.)

{¶ 13} Father was given a copy of his case plan as well as referrals for domestic violence and parenting classes at several agencies, including West Side Community House, Fatherhood Initiative, Cleveland Heights Collaborative, and others. Father was assigned to a case manager at West Side Community House, who informed Bailey that Father did not want to interact with him. (Tr. 33.) The agency had referred Father for services at Family Solutions before Bailey was assigned to the case, and Father also refused those services. (Tr. 34.)

{¶ 14} Visitation with A.C. started in February 2018. Bailey testified that Father came to one visit in March, one doctor's appointment in April, and two visits in May 2018. Father had no visits with A.C. between May 2018 and October 25, 2018, the day of the hearing on CCDCFS's motion for legal custody to Uncle. West Side Community House stopped scheduling visits in July 2018, because Father repeatedly failed to show up. (Tr. 35.)

{¶ 15} Bailey testified that A.C. was "doing great" in Uncle's care. Uncle ensures that she receives all medical treatments, including regular physical and occupational therapy. A.C. did not receive services through Help Me Grow, however, because her parents never granted permission for the program, and their

permission was required while she was in temporary custody. (Tr. 36.) Bailey testified that Uncle had also passed all background checks, had an appropriate home, and had legal custody of A.C.'s half-brother, K.J.

{¶ 16} Bailey opined that an order granting legal custody of A.C. to Uncle was in the child's best interest. Although there was still time for an extension of temporary custody, Bailey believed an immediate award of legal custody to Uncle was better for A.C. because A.C. needs permanency. Bailey testified that neither parent had demonstrated the ability to care for A.C.'s special medical needs. A.C. requires regular physical and occupational therapy and regular visits to a pulmonologist for treatment of pulmonary hypertension. (Tr. 40-42.) A.C. also has ongoing issues related to her premature birth and was still going to a preemie clinic. (Tr. 40.) Bailey testified that legal custody would be better for A.C. than an extension of temporary custody because Father has not worked on his case plan and has not demonstrated that he is able to care for A.C.'s medical needs. (Tr. 42-43.) Although Father interacts with A.C. appropriately and expresses his love for her, he has not demonstrated that he can support A.C. financially. (Tr. 38-39.)

{¶ 17} Father arrived over an hour late for the hearing and missed most of Bailey's testimony. After Bailey's testimony, the magistrate reviewed the statement of understanding with Uncle, explaining his responsibilities with respect to A.C. if he were awarded legal custody. Uncle indicated that he understood and accepted the responsibilities. (Tr. 53.) The court then recessed to give Father an opportunity to consult with his lawyer before taking the stand. However, when the hearing

resumed, Father's trial counsel informed the court that Father had a panic attack, was having trouble breathing, and left the courthouse. Counsel requested a continuance of the hearing due to a medical emergency. (Tr. 62.) The magistrate denied the continuance on grounds that Father arrived late for the hearing, he knew he was due to testify next and knew he was likely going to be arrested pursuant to an active arrest warrant. (Tr. 63-64.)

{¶ 18} Thereafter, the guardian ad litem ("GAL") recommended that the court grant legal custody of A.C. to Uncle. The GAL explained that A.C. has "really flourished" in Uncle's care and that A.C.'s medical conditions have been improving. Uncle is Mother's uncle and has facilitated a healthy relationship between Mother and A.C. (Tr. 68.)

{¶ 19} The magistrate granted CCDCFS's motion to award legal custody of A.C. to Uncle. Father objected to the magistrate's decision. The trial court overruled father's objections and adopted the magistrate's decision. Father now appeals the trial court's judgment.[1]

## II. Law and Analysis

### A. Continuance

{¶ 20} In the first assignment of error, Father argues the trial court erred in denying his request for a continuance of the hearing. He contends he was precluded

---

[1] Mother has not appealed the trial court's judgment.

from testifying due to a medical condition and that the trial court's denial of a continuance violated his right to due process.

{¶ 21} The decision to grant or deny a motion for a continuance rests in the sound discretion of the trial court. *State v. Unger*, 67 Ohio St.2d 65, 423 N.E.2d 1078 (1981). An abuse of discretion implies a decision that is unreasonable, arbitrary, or unconscionable. *State ex rel. DiFranco v. S. Euclid*, 144 Ohio St.3d 571, 2015-Ohio-4915, 45 N.E.3d 987, ¶ 13. When applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court. *Vannucci v. Schneider*, 2018-Ohio-1294, 110 N.E.3d 716, ¶ 22 (8th Dist.).

{¶ 22} The right to parent one's children is a fundamental right protected by the Due Process Clause of the United States and Ohio Constitutions. *In re M.W.*, 8th Dist. Cuyahoga No. 103705, 2016-Ohio-2948, ¶ 9. A fundamental requirement of due process is notice and the opportunity to be heard. *Id.*

{¶ 23} However, a parent's right to be present at a custody hearing is not absolute. *In re C.K.*, 8th Dist. Cuyahoga No. 108313, 2019-Ohio-4167, ¶ 20, citing *In re M.W.* at ¶ 10. While courts must ensure that due process is provided in parental termination proceedings, "a parent facing termination of parental rights must exhibit cooperation and must communicate with counsel and with the court in order to have standing to argue that due process was not followed in a termination proceeding." *In re Q.G.*, 170 Ohio App.3d 609, 2007-Ohio-1312, 868 N.E.2d 713, ¶ 12 (8th Dist.). Any potential prejudice to a party denied a continuance is weighed

against a trial court's "right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." *Unger* at 67.

{¶ 24} In *Unger,* 67 Ohio St.2d 65, 423 N.E.2d 1078, the Ohio Supreme Court noted that "[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Id.* at 67. In *Unger*, the court identified certain factors a court should consider in evaluating a motion for a continuance. These factors include:

> the length of the delay requested; whether other continuances have been requested and received, the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.

*Id.* at 67-68.

{¶ 25} Juv.R. 23 is also instructive and provides that "[c]ontinuances shall be granted only when imperative to secure fair treatment for the parties." Loc.R. 49(C) of the Court of Common Pleas of Cuyahoga County, Juvenile Division, further provides:

> No case will be continued on the day of trial or hearing except for good cause shown, which cause was not known to the party or counsel prior to the date of trial or hearing, and provided that the party and/or counsel have used diligence to be ready for trial and have notified or made diligent efforts to notify the opposing party or counsel as soon as he/she became aware of the necessity to request a postponement. This rule may not be waived by consent of counsel.

{¶ 26} Counsel requested a continuance on the day of trial due to an alleged medical emergency. Although counsel reported that Father was having trouble breathing and went to the emergency room, the court noted that Father arrived an hour late for the hearing and was aware of an outstanding arrest warrant that was likely to result in his arrest. In other words, the court concluded that Father's purported medical emergency was dilatory and contrived. Indeed, Father had previously used dilatory tactics by filing motions asking for the magistrate to recuse herself, for a new GAL, and for a new case worker. In his request for a new case worker, he claimed he and Mother knew Bailey's grandmother and that Bailey's grandmother was intimately familiar with Mother's family. Yet, Bailey testified that her grandmother passed away in 2014, long before A.C. was born. A medical emergency could be a legitimate basis for a continuance. But in this case, the trial court had a justifiable reason to believe that Father was manipulating the process rather than suffering a true medical emergency. We find no abuse of discretion in denying the requested continuance under these circumstances.

{¶ 27} The first assignment of error is overruled.

## B. Legal Custody to Uncle

{¶ 28} In the second assignment of error, Father argues the trial court erred in denying Father's motion for an extension of temporary custody. In the fourth assignment of error, Father argues the trial court lacked competent, credible evidence on which to grant legal custody to Uncle because Father was unable to

testify at the hearing due to a medical emergency. We discuss these assigned errors together because they are interrelated.

{¶ 29} R.C. 2151.011(B)(21) defines legal custody as:

a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities.

Thus, legal custody is significantly different from permanent custody. *In re T.R.*, 8th Dist. Cuyahoga No. 102071, 2015-Ohio-4177, ¶ 32. Unlike permanent custody, where parental rights are completely terminated, parents who lose legal custody retain residual parental rights, privileges, and responsibilities.[2] *Id.*; R.C. 2151.353(A)(3)(c). And although legal custody is intended to be permanent, parents may, under certain circumstances, petition the court for reunification with their children in the future. R.C. 2151.42(B).

{¶ 30} Because legal custody is a less drastic remedy than permanent custody, the trial court applies a less stringent evidentiary standard. "Unlike in a permanent custody proceeding, where an agency's burden is by clear and convincing evidence, the standard in legal custody proceedings is a preponderance of the evidence." *In re M.D.R.*, 11th Dist. Portage Nos. 2018-P-0032 and 2018-P-0033, 2019-Ohio-1054, ¶ 16; *see also In re G.W.*, 8th Dist. Cuyahoga No. 103706, 2016-

---

[2] Where a child is placed in legal custody of another person, the parents retain "the privilege of reasonable visitation," the right to "consent to adoption," "the privilege to determine the child's religious affiliation," and "the responsibility of support." R.C. 2151.353(A)(3)(c).

Ohio-5242, ¶ 15.  "Preponderance of the evidence means 'evidence that's more probable, more persuasive, or of greater probative value.'"  *In re J.B.*, 8th Dist. Cuyahoga No. 103521, 2016-Ohio-5513, ¶ 54, quoting *In re C.V.M.*, 8th Dist. Cuyahoga No. 98340, 2012-Ohio-5514, ¶ 17.  We review the record to determine if the trial court's judgment is supported by the manifest weight of the evidence.  *In re D.G.B.*, 8th Dist. Cuyahoga No. 107921, 2019-Ohio-3571, ¶ 25.

{¶ 31}  A manifest weight of the evidence challenge concerns "'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'"  *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1594 (6th Ed.1990).  A reviewing court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'"  *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 32}  The Ohio Supreme Court has held that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. "Because the trier of fact sees and hears the witnesses and is particularly competent to decide 'whether, and to what extent, to credit the testimony of particular witnesses,' we must afford substantial deference to its determinations of credibility." *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047, quoting

*State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 Ohio App. LEXIS 3709, 11 (Aug. 22, 1997).

{¶ 33} We will not reverse an award of legal custody absent an abuse of discretion. *In re C.D.Y.*, 8th Dist. Cuyahoga No. 108355, 2019-Ohio-4262, ¶ 8. When applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court. *Vannucci*, 2018-Ohio-1294, 110 N.E.3d 716, ¶ 22 (8th Dist.). However, where the court's decision on the child's best interests is not supported by competent, credible evidence, then it is unreasonable and may be reversed. *In re J.W.*, 8th Dist. Cuyahoga No. 108139, 2019-Ohio-3666, ¶ 17, citing *In re Nice*, 141 Ohio App.3d 445, 455, 751 N.E.2d 552 (7th Dist.2001), and *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 550 N.E.2d 178 (1990), syllabus.

{¶ 34} The statutory scheme governing the award of legal custody does not include a specific test or set of criteria, but Ohio courts, including this court, have held that the juvenile court must base its decision to award legal custody on the best interest of the child. *In re B.B.*, 2016-Ohio-7994, 74 N.E.3d 904, ¶ 18 (9th Dist.); *In re B.J.*, 2017-Ohio-315, 81 N.E.3d 975, ¶ 14 (8th Dist.); *In re C.N.*, 2d Dist. Montgomery No. 27119, 2016-Ohio-7322, ¶ 26.

{¶ 35} In determining the best interest of the child in a legal custody case, the juvenile court must consider all relevant factors, and may look to the factors listed under R.C. 2151.414(D) for guidance even though these factors apply to permanent custody decisions. *In re M.B.*, 8th Dist. Cuyahoga No. 105168, 2017-Ohio-7481, ¶ 11. Those factors include the interaction of the child with the child's

parents, relatives, and caregivers; the wishes of the child, as expressed directly by the child or through the child's guardian ad litem; the custodial history of the child; and the child's need for a legally secure permanent placement. R.C. 2151.414(D).

{¶ 36} The magistrate found that Father failed to complete a psychological assessment, failed to complete parenting and domestic violence education services, did not consistently visit A.C., and did not consistently attend A.C.'s medical appointments even though he was permitted to do so. (Magistrate's decision Oct. 29, 2018.) The magistrate also found that Father failed to make "significant progress on the case plan" and that "progress has not been made in alleviating the causes for the removal of the child from the home." *Id.*

{¶ 37} The record supports the trial court's findings. Bailey testified that Father did not complete any of his case plan objectives. He rescheduled the psychological assessment through the court clinic three times and failed to appear for the third and final appointment. The clinic's policy precluded Father from scheduling any more appointments. (Tr. 29, 31.)

{¶ 38} Father was assigned to a case manager at West Side Community House, where he could have completed parenting and domestic violence classes. According to Bailey, Father did not want to interact with the case manager, and the case manager was unable to help him with services. Before Bailey was involved in this case, the agency referred Father to Family Solutions for services, but Father also refused its services. (Tr. 33.) Thus, the evidence showed that Father was not willing

to cooperate with agency services designed to help him meet the objectives of his case plan so that he could be reunited with A.C.

{¶ 39} Bailey testified that Father failed to regularly visit A.C. Visits started in February 2018. Father came to one visit in March, one doctor's appointment in April, and two visits in May. Father failed to attend any visits after May 2018, and West Side Community House officially stopped all visits in July 2018, because Father was not attending visits. (Tr. 35.) Thus, at the time of the legal custody hearing, Father had not seen A.C. in five months.

{¶ 40} Father now blames Bailey for his failure to make progress on his case plan. He asserts that Bailey "caused him consternation in completing his case plan and seeing his daughter." (Appellant's brief at 19.) He also asserts he was unable to work on his case plan due to a broken leg. (Tr. 46.) However, Bailey testified that she accommodated Father as much as possible. Pursuant to Father's request, Bailey communicated with Father exclusively through emails. (Tr. 10.) She emailed Father to inquire about his progress and to provide him with information regarding A.C.'s doctor's appointments, therapy sessions, and "all the information he needs." (Tr. 10.) Even after Father's visits were stopped, Bailey continued trying to arrange visits. (Tr. 34-36.) Moreover, Father could have completed parenting and domestic violence education classes at West Side Community House without interacting with Bailey, but Father did not want to engage with the case worker there anymore than he wanted to work with Bailey. Father blamed Bailey for his failure to complete any

of his case plan objectives even though he made no effort to pursue services that involved no interaction with Bailey.

{¶ 41} Furthermore, the GAL stated at the hearing that he believed an award of legal custody to Uncle was in A.C.'s best interest. The GAL advised the court that A.C.'s health conditions have improved since she has been in Uncle's care. (Tr. 68.) He further stated that Uncle facilitates a loving relationship between A.C. and Mother. He explained:

> [W]hen I was there visiting, the mother was also there and I saw her — she has a great bond with her child and was holding her and, you know, they seem very happy together. So I'm in agreement with legal custody to [Uncle].

(Tr. 68.) Thus, A.C.'s wishes, as expressed by the GAL, were for an order granting legal custody to Uncle.

{¶ 42} Therefore, there was competent, credible evidence that A.C. was thriving in Uncle's care and that Father was not making an effort to remedy the problems that caused A.C. to be removed from his care. A.C. had a bonded relationship with Uncle and very little interaction with Father. Furthermore, Bailey testified that A.C. needs a permanent home. We cannot say that awarding legal custody of A.C. to Uncle was an abuse of discretion under these circumstances.

{¶ 43} Father, nevertheless, argues the trial court should have given him an extension of temporary custody rather than awarding legal custody to Uncle. However, an extension of legal custody may only be granted if the court finds, by clear and convincing evidence, that

the extension is in the best interest of the child, there has been significant progress on the case plan of the child, and there is reasonable cause to believe that the child will be reunified with one of the parents or otherwise permanently placed within the period of extension.

R.C. 2151.415(D)(1). In other words, if the court finds that an extension is not in the child's best interest or that reunification is not likely in the next six months, it is not required to grant an extension of temporary custody. *In re Da.B.*, 8th Dist. Cuyahoga No. 105886, 2018-Ohio-689, ¶ 17. *See also In re C.M.,* 9th Dist. Summit No. 24380, 2009-Ohio-943, ¶ 24 ("Where the trial court finds that it is in the best interest of a child to be placed in legal custody as a permanent disposition, the trial court must necessarily deny an extension of temporary custody."); *In re G.B.,* 2d Dist. Greene No. 2017-CA-30, 2017-Ohio-8759 (Denial of extension of temporary custody was not an abuse of discretion where father failed to substantially comply with four objectives of his case plan and permanent custody was in the children's best interest.).

{¶ 44} As previously stated, the trial court found, and the record demonstrates, that Father failed to make any significant progress on his case plan and that he failed to remedy the conditions that caused A.C.'s removal. Rather than work on his case plan, Father blamed others for his failure. It was, therefore, doubtful that A.C. could be reunified with Father within six months. We, therefore, find no abuse of discretion in denying Father's request for an extension of temporary custody.

{¶ 45} The second and fourth assignments of error are overruled.

## C. Request for New Social Worker

{¶ 46} In the third assignment of error, Father argues that the trial court's judgment should be reversed because the trial court denied his request to remove the assigned case worker.

{¶ 47} Father cites no legal authority to support his argument, and we have found no precedent addressing this issue. It is, therefore, an issue of first impression. In the absence of any legal authority dictating otherwise, we review the trial court's decision denying Father's request to remove the assigned case worker for an abuse of discretion since an appellate court reviews a juvenile court's custody decision for an abuse of discretion. *In re V.C.*, 8th Dist. Cuyahoga Nos. 102903, 103061, and 103367, 2015-Ohio-4991, ¶ 52.

{¶ 48} In his motion to have the case worker, Bailey, removed, Father alleged that one of Bailey's grandmothers had a personal relationship with Mother's family. Father's motion further alleged that "he and his wife know Ms. Bailey's grandmother[.]" Bailey testified, however, that both of her grandmothers are deceased; one grandmother died before she was born and the other grandmother died in 2014, long before A.C. was born. (Tr. 16.) Bailey also denied that she or her family had any connections to Mother's family, and Father provided no evidence of any relationship between the families other than his bald accusations. The trial court assessed Bailey's demeanor while testifying and found her testimony credible. In the absence of any contradictory evidence, we have no reason to doubt Bailey's

credibility and, therefore, find no abuse of discretion in the trial court's judgment denying Father's motion to remove the assigned case worker.

**{¶ 49}** The third assignment of error is overruled.

**{¶ 50}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, PRESIDING JUDGE

ANITA LASTER MAYS, J., and
LARRY A. JONES, SR., J., CONCUR