[Cite as *In re K.V.*, 2022-Ohio-4290.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE K.V., ET AL. | : | |
| | : | No. 111668 |
| A Minor Child | : | |
| | : | |
| [Appeal by Mother] | : | |

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 1, 2022

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD-20-910497, AD-20-910498, and AD-20-910499

### *Appearances:*

Gregory T. Stralka, *for Mother*.

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Joseph C. Young, Assistant Prosecuting
Attorney, *for appellee*.

MARY J. BOYLE, J.:

{¶ 1} In this consolidated appeal, appellant-mother ("Mother"), appeals

from the juvenile court order awarding permanent custody of her children, K.V.,

M.V., and G.G., to the Cuyahoga County Division of Children and Family Services

("CCDCFS"). Mother argues the trial court abused its discretion when it denied her

motion for continuance and CCDCFS failed to present sufficient evidence to

establish a basis upon which permanent custody could be granted.  For the reasons set forth below, we affirm.

## I.  Facts and Procedural History

{¶ 2}  On December 4, 2020, CCDCFS filed a complaint in juvenile court, alleging that K.V. (d.o.b. 12/07/2015), M.V. (d.o.b. 12/28/2016), G.G. (04/19/2018) (collectively, "the children"), and two other siblings, J.G. and S.G. (not the subject of this appeal) were abused, neglected, and dependent and requested predispositional temporary custody.  The complaint alleges that C.V. ("Father"), the alleged father of K.V., M.V. and G.G., was arrested.  Upon his arrest, a gun and illegal drugs were found in Father's possession.  Father also has multiple convictions for drug-related offenses.  The complaint further alleges that Mother fails to provide for the children's basic needs on a consistent basis.  Mother regularly leaves the children home for extended periods of time without an appropriate plan of care for the children, and K.V was previously adjudicated delinquent.  The complaint further alleges that Mother was previously convicted of drug possession and child endangering and G.G. was the victim of child endangering.

{¶ 3}  After a hearing held on December 15, 2020, the juvenile court ordered that the children be placed in the predispositional temporary custody of CCDCFS. The court held a hearing on the complaint for temporary custody on March 1, 2021. After the conclusion of this hearing, the court adjudicated the children abused, neglected, and dependent, and they were committed to the temporary custody of CCDCFS.  Within the adjudication order, the court found "that the allegations of the

Complaint, as amended by the Court based on the testimony presented, have been proven by clear and convincing evidence. The amended complaint is attached to the order as Exhibit A and marked as Court's Exhibit A." (Judgment Entry, Mar. 4, 2021.) The allegations included facts relating to Mother's failure to provide for the children's educational and basic needs, the children's prior adjudication due to Mother's substance abuse issues, Mother's prior convictions for drug possession and child endangering, and the discovery of illegal drugs in Mother's purse and home.

{¶ 4} The court also approved and attached the case plan, which included objectives relating to Mother's substance abuse and parenting issues. The case plan reflects that Mother "has a history of substance abuse, specifically cocaine and amphetamines. She tested positive recently for both. Her drug use has interfered with her ability to provide care to her children on a daily basis." (Judgment Entry, Mar. 4, 2021.) The case plan required Mother to undergo a drug and alcohol assessment, successfully complete any recommended treatment and aftercare, sign a release of information, submit to random screens, and successfully complete a parenting program approved by CCDCFS.

{¶ 5} On September 23, 2021, CCDCFS filed a motion to modify temporary custody to permanent custody. The affidavit attached in support of the motion indicated that Mother "ha[d] not engaged in case plan services," "has only had limited communication with the assigned Agency worker," and "ha[d] unresolved charges of Possession of Meth * * * and Attempted Possession of Drugs."

{¶ 6} On May 24, 2022, the matter proceeded to trial on CCDCFS's permanent custody motion. Prior to the start of trial, Mother's attorney requested a continuance, stating,

> I respectfully request a continuance of today's hearing. This is my first meeting with my client in quite some time. She informs me of some progress that she has made on the case plan and since the older two children, there already is an extension of temporary custody, I respectfully request the same opportunity regarding the three younger children.

(May 24, 2022, tr. 5.) The trial court noted that the extension for the two older children was based on their father's progress with his case plan and not due to Mother's situation. (May 24, 2022, tr. 5-6.) CCDCFS objected to the continuance request, stating that

> this [permanent custody] motion was filed in September of 2021. We've got them pending for roughly eight months. In that time, mother has not appeared.
>
> While I understand counsel's desires to talk to her client and see where her client has been. The fact remains it's been eight months and she has been missing from this case. She has been for several months missing from the purview of the Agency. We've made several attempts to contact her and have been unsuccessful. So we are prepared to move forward today, your Honor.

(May 24, 2022, tr. 6.)

{¶ 7} The trial court stated that it had scheduled numerous hearings on the permanent custody motion dating back to before January "to allow the mother an opportunity to show up. Every time we have come in [Mother's trial counsel] has informed the Court of all of the very numerous efforts that she has made to try to contact her client." (May 24, 2022, tr. 7.) The court then denied the continuance

request. Father's attorney then advised the court that Father is currently incarcerated, has pending federal charges, and anticipates a prison sentence of at least ten years. (May 24, 2022, tr. 8.) Father's attorney further advised that Father is in agreement with permanent custody to CCDCFS. (May 24, 2022, tr. 8.)

{¶ 8} At trial, testimony was first received from CCDCFS child protection specialist Kenneth Orlowski ("Orlowski"). Orlowski testified that the children first came to the attention of CCDCFS in 2020 due to educational neglect. (May 24, 2022, tr. 16-17.) He stated that "from March 9th of 2020 through mid September of 2020 [the children] had not attended school at all." (May 24, 2022, tr. 17.) The initial investigation revealed additional concerns relating to drug charges, gun charges, and deplorable housing. (May 24, 2022, tr. 17.) Orlowski further testified that J.G., S.G., and K.V. had previously been in agency custody due to similar issues involving parenting and substance abuse, as well as housing, domestic violence, and anger management. (May 24, 2022, tr. 20-22.)

{¶ 9} After the children were ordered placed in agency custody, a case plan was developed and implemented to promote the permanency plan of reunification. (May 24, 2022, tr. 20-22.) CCDCFS referred Mother to services through Recovery Resources to address her parenting issues and had completed all but one class before she became unlocatable. (May 24, 2022, tr. 22-23.) The parenting program was willing to have her come in and complete her remaining class to finish the program in early December 2021, but indicated that if she failed to appear as scheduled, she would have to start over with the service. (May 24, 2022, tr. 23.) CCDCFS was

unable to locate Mother at that time, and the parenting objective remained incomplete due to her failure to complete all of the required parenting classes. (May 24, 2022, tr. 23-24.) Orlowski explained, "[W]hen we were trying to get in touch with mother it was really hard to actually establish any kind of communication. Phone numbers would change and although sometimes mother would make visits to the children, it was often very difficult to set up any kind of services." (May 24, 2022, tr. 24.) Orlowski further explained that he attempted to arrange Mother's services through Recovery Resources because he was aware that Mother

> had an outstanding warrant and I knew that at the time recovery resources would potentially do her classes through the prison and then they could also do that with the substance treatment because I've had clients in the past where they've done both of those while I've had a client that has been incarcerated and this way we could keep all of the services under one roof at the time so that mother could sort out her warrant and be able to do her services at the same time.

(May 24, 2022, tr. 24-25.)

{¶ 10} Orlowski referred Mother to Recovery Resources for substance abuse services as well. (May 24, 2022, tr. 25.) He urged her to engage with them, and Mother completed an assessment, but then never returned to complete the recommended treatment or to submit to drug screening as requested. (May 24, 2022, tr. 25-26.) Orlowski requested screening from Mother whenever he met with her but noted that "she would disappear for months at a time[.]" (May 24, 2022, tr. 26.) Other than an initial failed attempt to screen, Mother never submitted to any

of the other screens as requested. (May 24, 2022, tr. 25-26.) Aside from her failure to address her substance abuse issues, CCDCFS's

> biggest concern [was] that mother would disappear. She was gone from mid December through either late April or early May where she hadn't seen the kids, she hadn't talked to the maternal grandmother who had the kids, she hadn't been in contact with the Agency. And to be gone for several months at a time was concerning.
>
> * * *
>
> In addition there had been several criminal run-ins in the past. * * * [M]other had been incarcerated and has been working on trying to get her warrants worked out, but she still does have outstanding criminal charges.

(May 24, 2022, tr. 27.)

{¶ 11} Despite repeated efforts to contact Mother by phone, text, and through her own mother, Orlowski has not been able to speak with Mother and had not seen her from December of 2021, until the day of trial on May 24, 2022. (May 24, 2022, tr. 29.) Mother also had outstanding criminal charges at the time of trial related to failure to appear in court and attempted drug possession, for which there was an outstanding warrant for Mother's arrest. (May 24, 2022, tr. 27-28.)

{¶ 12} CCDCFS set up visitation so that Mother could have weekly visits with the children at the maternal grandmother's house. (May 24, 2022, tr. 32.) When Mother did attend these visits, "she tended to be good with the kids. She paid attention to them." (May 24, 2022, tr. 32.) Orlowski testified that Mother's attendance at visitation with the children was sporadic and, at the time of trial in May 2022, she had not seen the children at all since December 2021. (May 24, 2022, tr. 32-34.)

{¶ 13} On cross-examination, Orlowski testified that all three children could go to interested parties or relatives through adoption. (May 24, 2022, tr. 38.) He further testified that the children have been in CCDCFS custody since December 15, 2020, and Mother

> had had a parenting class previously when she had lost custody before now and regained the children and although she regained the children, she also retained her substance issue and although she had nearly finished her parenting class, she was still picking up legal charges and still abusing substances[.]

(May 24, 2022, tr. 43-44.) Mother also failed to demonstrate the ability to obtain and maintain appropriate housing. (May 24, 2022, tr. 43-44.)

{¶ 14} Testimony was next received from the children's maternal grandmother. She testified that the children would be brought to her house by their foster mother and that they visited with their maternal grandparents and their two older siblings, J.G. and S.G, who were at her house. (May 24, 2022, tr. 48-49, 56.) These visits were one day a week. (May 24, 2022, tr. 49-50.) The children, who were four, five, and six years old at the time of trial, engaged with the family in a loving manner during visits. (May 24, 2022, tr. 50.) She indicated that Mother was attending the weekly visits but stopped attending in December 2021 and had not been back to visit since then. (May 24, 2022, tr. 50-51.) She acknowledged that when Mother is "good, she's a phenomenal mommy, [and does] crafts, breakfast, lunch and dinner. She does everything by the book. When she falters, she goes down, she needs help right now and she can do it." (May 24, 2022, tr. 53.) Maternal grandmother further testified about Mother's ability to care for the children, stating

that "[s]he's very good when she's good.  When she's not, forget it, you know, and I have to take care of them." (May 24, 2022, tr. 55.)  Maternal grandmother testified that Mother needs "detox and rehab."  (May 24, 2022, tr. 54.)  She testified to Mother's substance abuse issues and failure to engage in treatment, stating "I think [Mother] just denied what she was doing.  She was hiding it and we all knew, but she hides it and I just think [it's] her mindset.  I just can tell when she pleads inside that she wants out of this hole and she wants out.  She's not enjoying her life right now at all." (May 24, 2022, tr. 59.)

{¶ 15} The children's guardian ad litem ("GAL") stated on the record his recommendation in favor of permanent custody, noting that Mother had not made any significant progress on her case plan objectives and that "there's no reason for an extension of temporary custody" because Mother "hasn't made any significant progress to warrant that extension." (May 24, 2022, tr. 61-62.) The GAL concluded that "[w]e can't wait for [Mother] to get her act together.  These kids need permanency." (May 24, 2022, tr. 62.)

{¶ 16} After the conclusion of trial, the court issued a judgment entry for each of the children in which it terminated parental rights and found by clear and convincing evidence that it is in the best interests of the children to be placed in the permanent custody of CCDCFS.  The court further found that children cannot be placed with either of their parents within a reasonable period of time or should not be placed with either parent.

{¶ 17} It is from this order that Mother appeals, raising the following two assignments of error for review:

**Assignment of Error No. 1:** The trial court's denial of [Mother's] request for a continuance was an abuse of discretion since it effectively denied the [Mother's] right to counsel.

**Assignment of Error No. 2:** [CCDCFS] failed to present sufficient evidence to establish a basis upon which permanent custody could be granted.

## II. Law and Analysis

### A. Motion for Continuance

{¶ 18} The decision to grant or deny a motion for a continuance rests within the broad discretion of the trial court. *State v. Froman*, 162 Ohio St.3d 435, 2020-Ohio-4523, 165 N.E.3d 1198, ¶ 91, citing *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078, syllabus (1981). This broad discretion is also afforded to the trial court in a permanent custody hearing. *In re A.W.*, 8th Dist. Cuyahoga No. 109239, 2020-Ohio-3373, ¶ 25.

{¶ 19} We recognize that "[b]iological parents have a constitutionally protected right to be present at a permanent custody hearing." *In re A.W.* at ¶ 25, citing *In re Sears*, 10th Dist. Franklin No. 01AP-715, 2002-Ohio-368, ¶ 11. "'"There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied."'" *Id.* at ¶ 26, quoting *Unger* at 67, quoting *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 269 (1964). Factors to consider include:

"[T]he length of the delay requested; whether other continuances have been requested and received, the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case."

*In re A.W.* at ¶ 26, quoting *Unger* at 67-68.

{¶ 20} In addition, Juv.R. 23 provides that "[c]ontinuances shall be granted only when imperative to secure fair treatment for the parties" and Loc.R. 35(C) of the Cuyahoga County Court of Common Pleas, Juvenile Division provides:

No case will be continued on the day of trial or hearing except for good cause shown, which cause was not known to the party or counsel prior to the date of trial or hearing, and provided that the party and/or counsel have used diligence to be ready for trial and have notified or made diligent efforts to notify the opposing party or counsel as soon as he/she became aware of the necessity to request a postponement. This rule may not be waived by consent of counsel.

{¶ 21} "Because the termination of parental rights has been described as the family law equivalent of the death penalty in a criminal case, courts have required that 'great care be taken to ensure that due process is afforded parents in parental termination proceedings.'" *In re A.W.*, 2020-Ohio-3373, at ¶ 29, quoting *In the Matter of Rachal*, 6th Dist. Lucas No. L-02-1306, 2003-Ohio-1041, ¶ 12. The parent facing termination of parental rights, however, "'must exhibit cooperation and must communicate with counsel and with the court in order to have standing to argue that due process was not followed in a termination proceeding.'" *Id.*, quoting *In re Q.G.*, 170 Ohio App.3d 609, 2007-Ohio-1312, 868 N.E.2d 713, ¶ 12 (8th Dist.).

{¶ 22} Here, Mother argues the trial court's denial of her request for a continuance was an abuse of discretion since it effectively denied her the right to counsel. Mother's counsel requested a continuance because Mother disappeared for a period of time and counsel needed an opportunity to prepare the case. Mother argues that since this was the first requested trial continuance and continuances are given greater consideration in permanent custody cases, the denial of the continuance was an abuse of discretion.

{¶ 23} The record reflects that while Mother did appear for trial, her counsel's statement at the beginning of the proceedings made clear that Mother had not kept in regular contact with her attorney prior to the trial date. Mother's appearance at trial was the first contact she had with counsel in "some time." Mother's counsel stated that "[t]his is my first meeting with my client in quite some time. She informs me of some progress that she had made on the case plan and since the older two children, there already is an extension of temporary custody, I respectfully request the same opportunity regarding the three younger children." (May 24, 2021, tr. 5). The trial court noted, however, that the extension for the two older children was based on their father's progress with his case plan, and not due to Mother's situation. The court further noted that it had scheduled a number of hearings on the permanent custody motion "to allow [Mother] an opportunity to show up. Every time we have come in [Mother's counsel] has informed the Court of all of the very numerous efforts that she has made to try to contact her client." (May 24, 2021, tr. 6-7.) CCDCFS stated that the permanent custody motion had

been "pending for roughly eight months. In that time, mother has not appeared. *

* * [I]t's been eight months and mother has been missing from this case. She has been for several months missing from the purview of the Agency. We've made several attempts to contact her and have been unsuccessful." (May 24, 2021, tr. 6.)

{¶ 24} While Mother argues that the court's denial of her motion for continuance was an abuse of discretion, she has not explained her unexpected absence from the court proceedings. Under Loc.R. 35(C), good cause must be shown for a case to be continued on the day of trial. Here, the children have been in CCDCFS's custody since December 2020. Since the filing of the motion for permanent custody in September 2021, there had been at least six hearing dates prior to trial, and Mother failed to remain in communication with her trial counsel. Mother's counsel was unable to provide any justifiable reason for delaying the trial other than Mother's failure to clearly and consistently communicate with counsel and Mother's failure to timely engage in case plan services. Therefore, under the *Unger* factors, we are unable to conclude that the trial court abused its discretion when it denied the continuance after Mother failed to communicate with the court or her counsel regarding the circumstances of her absence.

{¶ 25} To the extent Mother argues that she was denied the right to effective assistance of counsel, we note that Mother's claim is unsupported by the record, which demonstrates that Mother was fully represented throughout the proceedings and that any alleged lack of preparation was the sole result of her own inaction. At trial, Mother's counsel gave an opening statement, cross-examined the witnesses,

and gave a closing statement. In *In re A.M.N.*, 8th Dist. Cuyahoga No. 111155, 2022-Ohio-2048, this court rejected a similar argument, noting that despite a claim of ineffectiveness due to a lack of preparation, father's trial counsel gave an opening and a closing statement, conducted the direct examination of father, and cross-examined the other witnesses. *Id.* at ¶17. Likewise, in the instant case, we cannot say that the juvenile court abused its discretion by denying counsel's 11th-hour request for a continuance.

{¶ 26} Therefore, the first assignment of error is overruled.

### B. Permanent Custody

#### 1. Standard of Review

{¶ 27} When reviewing a juvenile court's judgment in child custody cases, the Ohio Supreme Court has stated that the "court's decision in a custody proceeding is subject to reversal only upon a showing of abuse of discretion." *In re A.J.*, 148 Ohio St.3d 218, 2016-Ohio-8196, 69 N.E.3d 733, ¶ 27, citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 417, 674 N.E.2d 1159 (1997).

#### 2. R.C. 2151.414 Test for Determining Permanent Custody

{¶ 28} We recognize that the "[t]ermination of parental rights is an alternative of last resort but is sanctioned when necessary for the welfare of a child." *In re M.S.* at ¶ 7, citing *In re Wise*, 96 Ohio App.3d 619, 624, 645 N.E.2d 812 (9th Dist.1994). Before a court may terminate parental rights and award permanent custody of a child to the proper agency, it must determine by clear and convincing evidence that (1) one of the factors enumerated in R.C. 2151.414(B)(1)(a)-(e) applies,

and (2) an award of permanent custody is in the child's best interest. R.C. 2151.414(B).

{¶ 29} "'Clear and convincing evidence' is evidence that 'will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established.'" *In re C.B.*, 8th Dist. Cuyahoga No. 92775, 2011-Ohio-5491, ¶ 28, quoting *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954). "Where clear and convincing proof is required at trial, a reviewing court will examine the record to determine whether the trier of fact had sufficient evidence before it to satisfy the requisite degree of proof." *In re T.S.*, 8th Dist. Cuyahoga No. 92816, 2009-Ohio-5496, ¶ 24, citing *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990).

{¶ 30} "'An appellate court will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency if the judgment is supported by clear and convincing evidence.'" *In re J.M-R.*, 8th Dist. Cuyahoga No. 98902, 2013-Ohio-1560, ¶ 28, quoting *In re Jacobs*, 11th Dist. Geauga No. 99-G-2231, 2000 Ohio App. LEXIS 3859, 11 (Aug. 25, 2000), citing *In re Taylor*, 11th Dist. Ashtabula No. 97-A-0046, 1999 Ohio App. LEXIS 2620 (June 11, 1999). *See also In re AR.S.*, 2021-Ohio-1958, 174 N.E.3d 28 (8th Dist.)

### a. R.C. 2151.414(B)(1)(a)-(e) Factors

{¶ 31} Relevant to the instant case, the factors set forth in R.C. 2151.414(B)(1) include the following: the child cannot be placed with either parent within a reasonable period of time or should not be placed with either parent. R.C. 2151.414(B)(1)(a). We note that "[o]nly one of the factors must be present to satisfy

the first prong of the two-part analysis for granting permanent custody to an agency." *In re D.H.*, 8th Dist. Cuyahoga No. 110505, 2021-Ohio-3821, ¶ 27, citing *In re L.W.*, 8th Dist. Cuyahoga No. 104881, 2017-Ohio-657.

{¶ 32} Here, the juvenile court found that the children "cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents" as set forth in R.C. 2151.414(B)(1)(a).  In cases where R.C. 2151.414(B)(1)(a) applies, courts look to the factors set forth in R.C. 2151.414(E) to determine whether a child cannot be placed with a parent within a reasonable time or should not be placed with a parent.

{¶ 33} In the judgment entry granting permanent custody, the juvenile court considered the following factors set forth in R.C. 2151.414(E):  Mother had failed to remedy the conditions that caused the children to be placed outside her home (R.C. 2151.414(E)(1)); Mother's chemical dependency is so severe that it makes her unable to presently, or within one year of trial, provide an adequate permanent home for the children (R.C. 2151.414(E)(2)); Mother demonstrated a lack of commitment toward the children by failing to support, visit, or communicate with the children or provide an adequate permanent home for them (R.C. 2151.414(E)(4)); Mother has abandoned the children (R.C. 2151.414(E)(10)); Father was incarcerated at the time of the filing of the motion for permanent custody (R.C. 2151.414(E)(12)); Mother is unwilling to provide food, clothing, shelter, and other basic necessities for the children (R.C. 2151.414(E)(14)); and "any other factor the court considers relevant,"

which in this case is the fact that Father entered into an agreement to permanent custody (R.C. 2151.414(E)(16)).

{¶ 34} Only one of the enumerated factors under R.C. 2151.414(E) is required for the court to make the finding that "'the child cannot be placed with either parent within a reasonable time or should not be placed with either parent.'" *In re L.W.*, 8th Dist. Cuyahoga No. 107708, 2019-Ohio-1343, ¶ 29, quoting *In re Glenn*, 139 Ohio App.3d 105, 113, 742 N.E.2d 1210 (8th Dist.2000), and citing *In re R.M.*, 8th Dist. Cuyahoga Nos. 98065 and 98066, 2012-Ohio-4290, ¶ 14 (the existence of only one factor will support the court's finding that the child cannot be reunified with the parent within a reasonable time).

{¶ 35} Citing to R.C. 2151.414(E)(1) and 2151.414(E)(2), Mother's argument focuses on the juvenile court's findings that the children should not be placed with either parent within a reasonable amount of time. She further argues that there was no evidence that her chemical dependency prevented her from providing an adequate home for her children within a year. As a result, our discussion will address these two factors.

{¶ 36} Our review of the record clearly and convincingly supports the juvenile court's determination that the children could not be placed with Mother within a reasonable period of time. Trial testimony demonstrates that Mother's case plan objectives were incomplete due to her failure to make herself available or to complete all parenting classes as required. While Mother did complete an assessment, she never completed the recommended treatment or submitted to drug

screening as requested. Orlowski requested drug screenings from Mother but noted that "she would disappear for months at a time[.]" (May 24, 2021, tr. 26). Despite repeated efforts to contact Mother by phone call, text, and through her own mother, Orlowski had not been able to speak with Mother and had not met with her since December 2021. Mother also had outstanding criminal charges, including attempted drug possession, at the time of trial and an outstanding warrant for her arrest. At the time of trial, Mother had not demonstrated through changed behaviors any benefit from the services she had engaged in, she did not complete any of the services as referred, and she did not demonstrate the ability to achieve or maintain sobriety. Mother also failed to demonstrate the ability to obtain and maintain appropriate housing.

{¶ 37} The record further supports the juvenile court's determination that Mother's chronic chemical dependency is so severe that it makes her unable to provide an adequate permanent home for the children. The amended original complaint that resulted in the children being adjudicated dependent contained allegations that directly implicate Mother's chemical dependency. The allegations included facts relating to the children's prior adjudication due to Mother's substance abuse issues, prior convictions for drug possession and child endangering, and the discovery of illegal drugs in her purse and home. The case plan included objectives relating to Mother's substance abuse issues and indicated that Mother "has a history of substance abuse, specifically cocaine and amphetamines." The evidence at trial revealed that S.G. and J.G, as well as K.V., had previously been in agency custody

due to substance abuse. Moreover, Mother's ongoing chemical dependency issues were also acknowledged at trial by her own mother, who testified that Mother "needs help." Orlowski referred Mother to Recovery Resources and had urged her to engage with them, and while Mother did complete an assessment, she never returned to complete the recommended treatment or to submit to drug screening as requested.

{¶ 38} We recognize that Mother has taken steps to address her chemical dependency and that she is "very good" with the children when she's sober. However, as this court has previously stated, "[a]lthough commendable, this does not of itself preclude a grant of permanent custody to a children services agency. Substantial compliance with a case plan does not mean that the parent has achieved the ultimate goals of the plan or that the parent has substantially remedied the conditions that caused the children to be removed." *In re A.P.*, 8th Dist. Cuyahoga No. 104129, 2016-Ohio-5848, ¶ 19, citing *In re J.B.*, 8th Dist. Cuyahoga Nos. 98566 and 98567, 2013-Ohio-1706. Although Mother participated in case plan services and had visitation, she abandoned the children for approximately five months and did not provide any support or other assistance to them during the entire time the children were in the temporary custody of CCDCFS.

{¶ 39} Collectively, this evidence supports the juvenile court's finding that Mother failed to remedy the conditions that caused the children to be placed outside the home. While these actions alone are sufficient to satisfy the first prong of R.C. 2151.414(B), Mother's actions also demonstrated that she abandoned the children, she had a lack of commitment towards the children, and she was unable to provide

the children with a safe and permanent home. Accordingly, we find the record clearly and convincingly supports the court's conclusion that the children could not or should not be placed with Mother within a reasonable time.

{¶ 40} Having found that the trial court properly concluded that at least one of the R.C. 2151.414(B)(1) conditions applies, we must next determine whether the trial court appropriately found by clear and convincing evidence that granting permanent custody to the agency is in the children's best interest.

### b. The Children's Best Interest

{¶ 41} In determining the best interest of a child, the juvenile court must consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1).

{¶ 42} Although a trial court is required to consider each relevant factor under R.C. 2151.414(D)(1) in deciding to award permanent custody, "[t]here is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. This court has stated that only one of these enumerated factors needs to be resolved in favor of the award of permanent custody. *In re L.W.*, 2019-Ohio-1343, at ¶ 39, citing *In re Moore*, 8th Dist. Cuyahoga No. 76942, 2000 Ohio App. LEXIS 3958 (Aug. 31, 2000).

{¶ 43} Here, the juvenile court found that a grant of permanent custody is in the best interest of the children and the children cannot be placed with one of their parents within a reasonable time or should not be placed with either parent. As stated above, the testimony presented at trial demonstrated that while Mother acted appropriately with the children when she did visit them, she had not seen the children in the five months that passed since December 2021. While Mother did engage in parenting classes, she did not complete the program before she became unlocatable. Mother was also unable to demonstrate proof of sobriety and failed to obtain stable housing of her own. Additionally, Father was incarcerated pending federal charges, anticipated a prison sentence of at least ten years, and agreed to permanent custody. Furthermore, the children were removed and had been in CCDCFS custody for approximately 18 months by the time of trial in May 2022.

{¶ 44} Moreover, the GAL recommended that the court find permanent custody to be in the children's best interests. The GAL noted that the children were

six, five, and four years old and were too young to decide their own wishes.  The GAL stated that Mother had not made any significant progress on her case plan objectives and that "there's no reason for an extension of temporary custody" because Mother "hasn't made any significant progress to warrant that extension."  (May 24, 2022, tr. 61-62.)  The GAL concluded that "[w]e can't wait for [Mother] to get her act together. These kids need permanency."  (May 24, 2022, tr. 62.)

{¶ 45} Based on the foregoing, we find there is clear and convincing evidence in the record to support the juvenile court's determination that permanent custody to CCDCFS is in the children's best interests.

{¶ 46} Therefore, the second assignment of error is overruled.

## III.  Conclusion

{¶ 47} Mother failed to demonstrate that the juvenile court abused its discretion by denying her request for continuance on the day of trial when Mother's actions caused the delay.  In addition, the juvenile court's findings and its judgments granting permanent custody of the children to CCDCFS are supported by clear and convincing evidence in the record.

{¶ 48} Accordingly, judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

ANITA LASTER MAYS, P.J., and
EILEEN T. GALLAGHER, J., CONCUR