**In re Q.G.**

[Cite as *In re Q.G.*, 170 Ohio App.3d 609, 2007-Ohio-1312.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 88322.

Decided March 22, 2007.

Robert L. Tobik, Cuyahoga County Public Defender, and John T. Martin, Assistant Public Defender; and Theodore Amata, for appellant.

William D. Mason, Cuyahoga County Prosecuting Attorney, and James M. Price, Assistant Prosecuting Attorney, for appellee.

---

Ann Dyke, Judge.

{¶ 1} Appellant, T.T.,[1] challenges the judgment of the juvenile court that awarded permanent custody of her son Q.G. to the Cuyahoga County Department of Children and Family Services ("CCDCFS"). Because the adjudicatory hearing proceeded in the mother's absence despite her explanation for that absence, we reverse and remand for further proceedings consistent with this opinion.

{¶ 2} T.T., who is mentally retarded, gave birth to Q.G., her youngest child, on November 16, 2005. It is undisputed that CCDCFS has been awarded permanent custody of two of T.T.'s other children. When Q.G. was born, CCDCFS obtained an order of emergency custody that placed him in a foster home, and the state filed a complaint alleging that he was a dependent and neglected child. The matter was dismissed and refiled on February 14, 2006.

{¶ 3} The matter was set for a preliminary hearing on March 21, 2006. On this date, T.T. appeared, but service had not been perfected as to the alleged father. The trial court then continued the preliminary hearing to March 26, 2006. On this date, the charge was formally presented to T.T. and the baby's alleged father. Also on this date, T.T. and the alleged father signed and received notice that the adjudicatory hearing was scheduled for April 25, 2006.

{¶ 4} On April 25, 2006, T.T. failed to appear for the adjudicatory hearing. Her counsel explained to the trial court as follows:

{¶ 5} "Your honor, my client is well aware that there is a hearing today. She is impoverished. She had no money to even get a bus ticket to come here, and that is what she told me."

{¶ 6} The trial court did not inquire any further and proceeded with the adjudicatory hearing in T.T.'s absence. The court eventually adjudicated Q.G. neglected and dependent, and later, following the dispositional hearing, conducted with T.T. present, the trial court awarded permanent custody of the child to CCDCFS. T.T. now appeals and assigns three errors for our review. Because her second assignment of error is dispositive of this matter, we will consider the assignments out of their predesignated order.

{¶ 7} T.T.'s second assignment of error states:

{¶ 8} "The trial court denied [T.T.] due process when it proceeded without her at the adjudicatory hearing when there was an explanation for her absence."

---

1. The parties are referred to herein by their initials in accordance with this court's established policy regarding nondisclosure of identities in juvenile cases.

{¶ 9} The termination of parental rights is the family law equivalent of the death penalty. *In re Hayes* (1997), 79 Ohio St.3d 46, 48, 679 N.E.2d 680. Parents must be afforded due process before their rights can be terminated. *Santosky v. Kramer* (1982), 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599.

{¶ 10} *Santosky* stated:

{¶ 11} "The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs. When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures." Accord *In re Murray* (1990), 52 Ohio St.3d 155, 556 N.E.2d 1169.

{¶ 12} Ohio courts are also unanimous that great care must be taken to ensure that due process is used in parental-termination proceedings. *In re Trevor W.* (Nov. 30, 2001), Lucas App. No. L–01–1371, 2001 WL 1518066, citing *In re Adam M.* (Aug. 20, 1999), Lucas App. Nos. L–97–1207, L–98–1379, 1999 WL 628670. However, Ohio courts have also recognized that a parent facing termination of parental rights must exhibit cooperation and must communicate with counsel and with the court in order to have standing to argue that due process was not followed in a termination proceeding. *In re Trevor*, citing *In re James* [B.] (Mar. 4, 1996), Stark App. No. 1995 CA 00070, 1996 WL 132238.

{¶ 13} *Trevor* further noted:

{¶ 14} "In cases where the parent has communicated with the trial court or with counsel to explain a problem with attending the scheduled hearing date, Ohio courts have recognized that the failure of a trial court to take extra care to ensure the parent could be present is an abuse of discretion. See, e.g., *In the Matter of: Veronica* [D.] (Mar. 31, 2000), Ashtabula App. No. 98–A–0054[, 2000 WL 522484], unreported; and *In the Matter of: Lena* [D.] (Dec. 12, 1997), Geauga App. No. 96–G–2020[, 1997 WL 799561], unreported." *In re Trevor*, 2001 WL 1518066, * 3.

{¶ 15} See, also, *In re Rachal G.*, Lucas App. No. L–02–1306, 2003-Ohio-1041, 2003 WL 863556 ("In cases in which a parent has communicated with the trial court or with counsel to explain a problem attending a scheduled hearing, Ohio courts have [held that a trial court's failure] to take extra care to ensure the parent's presence constitutes an abuse of discretion"); *In re Savanah M.*, Lucas App. No. L–03–1112 2003-Ohio-5855, 2003 WL 22462478.

{¶ 16} In this instance, it is undisputed that appellant appeared at both scheduled preliminary hearings and that she did communicate with her counsel to explain that she did not have the financial resources to get to the adjudicatory hearing. The trial court simply proceeded in her absence and made no additional inquiries and took no extra care to ensure appellant's presence, a requirement that is especially significant here in light of the determination that T.T. is mentally retarded. Moreover, the record does not support the interpretation that appellant was absent due to simple disinterest in the proceedings. Finally, we note that although the trial court was cognizant of the 99-day limit within which the dispositional hearing had to be held, there is no reason to believe that anything other than a brief continuance or some manner of assistance was needed. In any event, the court could have determined that appellant impliedly waived the limitations periods proscribed within R.C. 2151. 35(B). See *In re Kutzli* (1991), 71 Ohio App.3d 843, 595 N.E.2d 1026; *In re Vinci*, Cuyahoga App. No. 79111, 2002-Ohio-1663, 2002 WL 568402

{¶ 17} For the reasons set forth above, the judgment of the trial court is reversed, and the matter is remanded for further proceedings consistent with this opinion. T.T.'s remaining assignments of error, in which she asserts that the award of permanent custody to CCDCFS is against the manifest weight of the evidence and was entered without providing her with sufficient time to comply with her case plan, are moot. See App.R. 12(A)(1)(c).

Judgment reversed
and cause remanded.

SWEENEY, P.J., and McMONAGLE, J., concur.