[Cite as *In re A.W.*, 2020-Ohio-3373.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE A.W., ET AL.                    :

Minor Children                        :          No. 109239

[Appeal by Ad.W., Mother]             :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 18, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD17915224, AD17915225, and AD17915226

---

### *Appearances:*

Gregory T. Stralka, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Rachel Eisenberg, Assistant Prosecuting
Attorney, *for appellee*.

MICHELLE J. SHEEHAN, P.J.:

{¶ 1}   Ad.W. ("mother") appeals from a judgment of the juvenile court granting permanent custody of her children A.W., I.W., and J.W. to the Cuyahoga County Division of Children and Family Services ("CCDCFS" or "agency"). After a

careful review of the record and applicable law, we affirm the judgment of the juvenile court.

**Substantive Facts and Procedural History**

{¶ 2} On October 10, 2017, CCDCFS filed a complaint alleging A.W., I.W., and J.W. were neglected and requesting the temporary custody of the children; the complaint was filed because mother left the children with a neighbor and did not return. On the same day, the children were committed to the predispositional emergency temporary custody of the agency.

{¶ 3} On December 13, 2017, a magistrate held a hearing on the agency's request for temporary custody. On December 29, 2017, the trial court adopted the magistrate's decision, finding the children to be neglected and dependent. In January 2018, the children were committed to the temporary custody of the agency.

{¶ 4} On September 12, 2018, the agency filed a motion to modify temporary custody to permanent custody. The court subsequently scheduled ten hearings on this matter (including the instant permanent custody hearing). Mother failed to appear at the pretrial hearing on September 18, 2018, March 5, 2019, March 26, 2019, and July 2, 2019.

{¶ 5} On August 27, 2019, the day the trial court initially set this matter for trial, mother failed to appear. The trial was ultimately continued to October 3, 2019,

due to the lack of service to J.R., father of the two younger children I.W. and J.W.[1] On October 3, 2019, mother appeared. Instead of trial, the trial court arraigned mother and J.R. on the agency's motion for permanent custody and rescheduled the trial to November 13, 2019. Mother signed the notice for the rescheduled trial date.

{¶ 6} On November 13, 2019, the hearing for permanent custody took place. The children's counsel, their guardian ad litem ("GAL"), counsel for mother, and counsel for J.R. were present, but neither mother nor father appeared at the hearing.

{¶ 7} The transcript reflected a brief exchange between mother's counsel and the trial court regarding mother's absence. Before her opening argument, mother's counsel briefly alluded to mother's absence: "Seeing my client is not here, your Honor, I would, for purposes of the record, ask for a continuance on her behalf. She was present at the last Court date and did receive this Court date and I have been in contact with her since then." After this brief statement, counsel proceeded to opening argument, arguing there was no clear and convincing evidence supporting the granting of permanent custody to the agency.

{¶ 8} After counsel's opening argument, the court responded to counsel's request for a continuance, stating "[y]our request — here, this was set at 9:30. It's now two minutes to ten and mom is still not here. So your request for a continuance

---

[1] J.R. did not appear at the permanent custody hearing held on November 13, 2019, nor did he appeal from the trial court's judgment granting permanent custody to CCDCFS. R.M., father of A.W. (the oldest child), passed away in July 2019.

is going to be denied at this point," to which counsel responded "[y]es, your honor." After this exchange, the matter proceeded to trial.

**Trial Testimony**

{¶ 9} Andrea Ford, a social worker and case coordinator for SAFY, a foster care and adoption agency, testified that the agency got involved when they received a referral from CCDCFS in 2017. The children, ages 11, 9, and 8 at the time of the hearing, had been left unsupervised and were not attending school. Ford diagnosed them with adjustment disorder.

{¶ 10} Ford testified that the biological family's visits with the children were sporadic and, as of late fall of 2018, mother missed the majority of her visits, showing up once every other month. Mother's lack of consistency with the visits created a lot of anxiety for the children. The lack of stability caused the children to act out; they became defiant and distrustful. The youngest, J.W., had the most difficulty, acting out both at school and the foster home. As a result, the visits were suspended between January 2019 and September 2019. Ford reached out to mother once a month for two years, but mother never returned her phone calls.

{¶ 11} Ford testified that the children have been in foster care since October 2017. The two younger children, I.W and J.W., were at one foster home and the oldest child, A.W., at another. The two foster homes coordinated the children's visits with each other. Ford has observed A.W. to show maturity and growth in his foster home. The agency, however, was planning to move J.W. to another foster family at the time of the hearing due to his lack of progress in his behaviors. All three children,

however, did well at school since they were placed in foster care; all three made the honor roll.

**{¶ 12}** A.W.'s foster mother testified regarding A.W.'s visitations with mother. The visits were weekly initially; mother did not consistently show up and sometimes did not show up for two months. As a result, the visits were reduced to a biweekly schedule. A.W.'s foster mother recalled one visit where mother failed to show up and A.W. became very upset. He insisted on calling her and confronting her. He scolded her for not showing up and accused her of lying to him and his siblings about having a home for them to return to. Mother got upset and started "cussing" at A.W.

**{¶ 13}** A.W.'s foster mother testified that in October 2019, a month before the permanent custody hearing, an incident occurred during a visitation. At the end of the visitation, when the foster mother gathered the children to leave, mother told the children to get inside her own vehicle. The children were very confused but eventually got inside the foster mother's vehicle. When the foster mother tried to shut the door of her vehicle, mother swung at her and ended up hitting her arm. One of the children's uncle was also there, and he also acted menacingly toward the foster mother. Mother then took the food the uncle was holding in his hand at the time and threw the food all over foster mother's vehicle. The children were very distraught over this incident. A.W. started to act out in school. A.W.'s foster mother testified she is a "foster-to-adopt" foster parent; A.W. had asked her to adopt him, and she was willing to do so, but she had some concerns because of the incident.

**{¶ 14}** Chris Woodall, a social worker at CCDCFS, testified that in October 2017, mother left the children in the care of a neighbor and provided no plan for their care. Prior to this incident, the children had been living from place to place, staying with either neighbors or relatives. When the agency became involved, it set up a case plan for mother to address her mental health, substance abuse, lack of housing, and parenting issues.

**{¶ 15}** Despite assistance from the agency, mother has not acquired housing, living at four different addresses since the agency's involvement. Mother did complete an eight-week parenting class in 2018. Regarding her mental health, mother went to the treatment center referred by the agency. She was diagnosed for bipolar disorder and depression and was prescribed medication, but had not followed up since the initial visit. She tested positive for marijuana in 2018. The agency required her to be assessed for substance abuse but she never engaged in the prescribed service.

**{¶ 16}** As to mother's visitation with the children, Woodall testified that beginning in 2019, mother stopped contacting the agency for the visits. There were no visitations for an extended period of time, although mother talked to children over the telephone. The lack of visits upset the youngest child, J.W., the most.

**{¶ 17}** Although mother took the parenting class, Woodall testified she did not think mother actually learned from the class. She was concerned about a lack of consistency and stability for the children as demonstrated by mother's inability to regularly visit with the children and to complete all the requirements in her case

plan.  In addition, mother told the children she had obtained housing for them even though she never did.  There were no relatives suitable and available to take the children.  The uncertainty about their future was difficult for the children.

{¶ 18}  Wildon Ellison, the children's GAL, filed a report on September 10, 2018, and again on May 8, 2019.  In the first report, he recommended the children to remain in the temporary custody of the agency.  In the second report, he recommended that the court grant the agency's motion to modify temporary custody to permanent custody.  At the hearing, he testified that permanent custody is in the children's best interest.  Although the children loved their mother, mother stayed with different people and had no housing for the children.  The GAL reported that he tried to visit mother the night before the permanent custody hearing.  She was staying with her sister at the time but was not home.  The GAL described the children's situation as "heartbreaking."  Because of mother's lack of commitment toward the children, he believed permanent custody is in the best interest of the children.  Despite the GAL's recommendation, Pamela Hawkins, counsel for the children, reported to the court that the children have expressed their wish to be reunited with their mother.

{¶ 19}  The trial court observed that the permanent custody was the 14th court-scheduled hearing for this matter.  The parents had been given ample opportunity to fulfil their case plan, and the case had reached a point where clear and convincing evidence existed to demonstrate the parents' lack of commitment toward the children.

{¶ 20} On November 22, 2019, the trial court journalized a decision granting permanent custody of the children to CCDCFS. Mother now appeals. Her sole assignment of error states: The trial court's denial of appellant's request for continuance was an abuse of discretion since no attempt was made to determine why appellant was not at the hearing.

**Standard of Review**

{¶ 21} We begin our analysis by recognizing that "a parent's right to raise a child is an essential and basic civil right." *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997). "The permanent termination of parental rights has been described as the family law equivalent of the death penalty in a criminal case." *In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, 776 N.E.2d 485, ¶ 14. A parent's right, however, is subject to the ultimate welfare of the child, which is the controlling principle to be observed in permanent custody cases. *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979). "All children have the right, if possible, to parenting from either natural or adoptive parents which provides support, care, discipline, protection and motivation." *In re J.J.,* 8th Dist. Cuyahoga No. 108564, 2019-Ohio-4984, ¶ 28.

{¶ 22} Ohio's permanent custody statute, R.C. 2151.414 sets forth a two-part analysis to be applied by a juvenile court in adjudicating a motion for permanent custody. Under the statute, the juvenile court is authorized to grant permanent custody of a child to the agency if, after a hearing, the court determines, by clear and convincing evidence that (1) any of the five factors under R.C. 2151.414(B)(1)(a) to

(e) exists, and (2) permanent custody is in the best interest of the child under the factors enumerated in R.C. 2151.414(D). Clear and convincing evidence is that which will produce in the trier of fact "'a firm belief or conviction as to the facts sought to be established.'" *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. While requiring a greater standard of proof than a preponderance of the evidence, clear and convincing evidence requires less than proof beyond a reasonable doubt. *In re Awkal*, 95 Ohio App.3d 309, 642 N.E.2d 424 (8th Dist.1994).

{¶ 23} As for our review, we will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency unless the judgment is not supported by clear and convincing evidence. *See, e.g., In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, ¶ 48, and *In re M.J.*, 8th Dist. Cuyahoga No. 100071, 2013-Ohio-5440, ¶ 24.

**Denial of Continuance**

{¶ 24} On appeal, mother does not challenge the trial court's decision granting permanent custody based on its findings under R.C. 2151.414. She only argues the trial court abused its discretion in denying her counsel's verbal request to continue the permanent custody hearing. Thus, the only issue before us is whether the trial court abused its discretion in denying a continuance under the circumstances of this case.

{¶ 25} Biological parents have a constitutionally protected right to be present at a permanent custody hearing. *In re Sears,* 10th Dist. Franklin No. 01AP-715, 2002-Ohio-368, ¶ 11. Generally, the decision whether to grant a continuance lies within the sound discretion of the trial court, and we will not reverse the decision on appeal absent an abuse of that discretion. *State v. Unger,* 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981). The same broad discretion is afforded to the trial court regarding a permanent custody hearing. *See, e.g., In re D.T.,* 8th Dist. Cuyahoga No. 108407, 2019-Ohio-4895, ¶ 15; *In re S.B.*, 8th Dist. Cuyahoga Nos. 101159 and 101160, 2014-Ohio-4839, ¶ 43; and *In re D.K.*, 2d Dist. Greene No. 2014-CA-37, 2015-Ohio-546, ¶ 9.

{¶ 26} Moreover, "[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Unger* at 67, quoting *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 269 (1964).

{¶ 27} Where a nonincarcerated parent fails to appear at a hearing and challenges the trial court's refusal to continue a permanent custody hearing to accommodate the parent's circumstances, the appellate courts have applied the factors set forth in *Unger* to determine whether the court abused its discretion. *In re D.K.* at ¶ 11.[2] The factors include:

---

[2] The Second District cited the following cases involving nonincarcerated parent that have the *Unger* factors: *In re M.H.*, 2d Dist. Montgomery No. 25084, 2012-Ohio-

[T]he length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.

*Unger* at 67-68.

{¶ 28} Furthermore, under Juv.R. 23, "[c]ontinuances shall be granted only when imperative to secure fair treatment for the parties." In addition, Loc.R. 35(C) of the Cuyahoga County Court of Common Pleas, Juvenile Division, provides:

No case will be continued on the day of trial or hearing except for good cause shown, which cause was not known to the party or counsel prior to the date of trial or hearing, and provided that the party and/or counsel have used diligence to be ready for trial and have notified or made diligent efforts to notify the opposing party or counsel as soon as he/she became aware of the necessity to request a postponement. This rule may not be waived by consent of counsel.

{¶ 29} We recognize that "'[a]ll things being equal, the testimony from a parent would provide more information than not having the parent.'" *In re Sears*, 10th Dist. Franklin No. 01AP-715, 2002-Ohio-368, at ¶ 11, quoting *In the Matter of Vandale*, 4th Dist. Washington No. 92 CA 9, 1992 Ohio App. LEXIS 4306 (Aug. 12,

---

5216, ¶ 29-30; *In re C.B.*, 3d Dist. Seneca Nos. 13-12-06 and 13-12-07, 2012-Ohio-2691, ¶ 25-27*; In re N.A.P.,* 4th Dist. Washington Nos. 12CA30 and 12CA31, 2013-Ohio-689, ¶ 20; *In re B.B.,* 5th Dist. Stark No. 2010CA00151, 2010-Ohio-4618, ¶ 35-38; *In re Nevaeh J.,* 6th Dist. Lucas No. L-06-1093, 2006-Ohio-6628, ¶ 43-46; *In re Kutcher*, 7th Dist. Belmont No. 02 BE 58, 2003-Ohio-1235, ¶ 26-27; *In re M.J.,* 8th Dist. Cuyahoga No. 100071, 2013-Ohio-5440, ¶ 21; *In re C.B.,* 9th Dist. Lorain No. 14CA010588, 2014-Ohio-4618, ¶ 12-17; *In re B.M.*, 10th Dist. Franklin No. 09AP-60, 2009-Ohio-4846, ¶ 10-12; and *In re B.D.*, 11th Dist. Lake Nos. 2009-L-003 and 2009-L-007, 2009-Ohio-2299, ¶ 47-49. As the Second District noted, when an incarcerated parent is involved, the courts applied a three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

1992).  Because the termination of parental rights is a serious matter, where a parent communicates with the court or counsel to explain a problem attending a hearing, the courts have required that "great care be taken to ensure that due process is afforded parents in parental termination proceedings." *In the Matter of Rachal*, 6th Dist. Lucas No. L-02-1306, 2003-Ohio-1041, ¶ 12.  However, "a parent facing termination of parental rights must exhibit cooperation and must communicate with counsel and with the court in order to have standing to argue that due process was not followed in a termination proceeding."  *In re Q.G.*, 170 Ohio App.3d 609, 2007-Ohio-1312, 868 N.E.2d 713, ¶ 12 (8th Dist.).

{¶ 30}  On appeal, mother argues her counsel should have been given the opportunity at the permanent custody hearing to contact her by telephone and to determine how long it would take her to arrive at the court for the hearing.  She argues the trial court abused its discretion in denying her counsel's verbal request to continue the hearing.

{¶ 31}  The record reflects that mother unexpectedly failed to appear at the permanent custody hearing.  While she faults the trial court for making no attempt to ascertain the reason for her nonappearance, she has yet to offer an explanation for her unexpected absence from the hearing.  Under the local rule, good cause must be shown for a case to be continued on the day of trial.  In this case, the children have been in the agency's custody since October 17, 2017.  The trial date of November 13, 2019, was the third date this matter was scheduled for trial and the 14th hearing on this matter, as the trial court noted.  This is the sixth time mother

failed to appear in court since the agency moved for permanent custody on September 12, 2018. Mother's counsel acknowledged mother received notice of the trial date, but was unable to provide any information or explanation for mother's absence. Thus, the record does not reflect mother cooperating or communicating with the court or her counsel regarding her absence. Counsel requested continuance after realizing that mother would not appear, but provided no reasons for her absence, legitimate or otherwise. Counsel, apparently unable to secure mother's presence at an already continued trial, did not request a specific length of continuation. Nothing in the record reflects the trial court did not permit counsel an opportunity to explain mother's absence or counsel requested an opportunity to telephone mother. Rather, the trial concluded an hour and a half after it was scheduled to begin and mother never appeared. Under the *Unger* factors, therefore, we are unable to conclude that the trial court abused its discretion when it denied counsel's request for a continuance after mother unexpectedly failed to show up for the permanent custody hearing without communicating with the court or her counsel regarding the circumstances of her absence.[3]

---

[3] Mother cites *In re K.D.*, 8th Dist. Cuyahoga No. 81843, 2003-Ohio-1847, to support her claim that the trial court should have made an attempt to determine the reason for her absence before proceeding to trial. In that case, on the day of the hearing on the agency's motion alleging neglect, the parents and their counsel failed to appear. The magistrate received a telephone call from counsel's office informing the court that counsel was detained in another hearing but would appear by noon. After waiting one hour, at 11:30 a.m., the magistrate proceeded with the hearing. Upon being notified that the hearing was proceeding, counsel immediately sent an associate to attend the hearing but the hearing was already concluded. Moreover, counsel had been previously informed by the social worker that the prosecutor was going to dismiss the matter. This court

**{¶ 32}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, PRESIDING JUDGE

RAYMOND C. HEADEN, J., and
MARY EILEEN KILBANE, J., CONCUR

---

reversed the trial court's decision finding the children neglected under the unique facts of the case. This court reasoned that, where the parents' counsel was given the impression that the matter was going to be dismissed, and where counsel had notified the court that he was unavoidably detained in another court proceeding, the juvenile court abused its discretion and should have continued the matter until at least noon or until the parties could appear. *K.D.* has no application in this case.