[Cite as *In re C.B.*, 2023-Ohio-1578.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

IN RE C.B., ET AL.                    :

Minor Children                        :                    No. 112112

[Appeal by A.M., Mother]              :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** May 11, 2023

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD21902930, AD21902932, AD21902933, AD21902934,
and AD21902935

---

## *Appearances:*

Gregory T. Stralka, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorneys, *for appellee.*

ON RECONSIDERATION[1]

EILEEN A. GALLAGHER, P.J.:

{¶ 1} Appellant-mother A.M. ("Mother") appeals the judgment of the Cuyahoga County Court of Common Pleas, Juvenile Division (the "juvenile court"), that terminated her parental rights and granted permanent custody of five of her minor children, C.B. (d.o.b. 12/28/11), C.D. (d.o.b. 9/11/16), A.D. (d.o.b. 1/20/18), K.W. (d.o.b. 12/16/19) and J.W., Jr. (d.o.b. 3/20/21) to appellee, the Cuyahoga County Division of Children and Family Services ("CCDCFS" or the "agency"). She contends that the juvenile court abused its discretion in denying her motion for a continuance of the permanent custody hearing. For the reasons that follow, we reverse the juvenile court and remand for further proceedings.

**Procedural and Factual Background**

{¶ 2} On April 13, 2021, CCDCFS filed a complaint for neglect and temporary custody with respect to C.B., C.D., A.D. and K.W. and for abuse, neglect and temporary custody with respect to J.W., Jr. As it relates to Mother,[2] the complaint alleged that Mother and J.W., Jr. had tested positive for oxycodone and benzodiazepines at the time of his birth, that Mother has substance abuse issues that interfere with her ability to provide adequate care for her children and that, although

---

[1] The original announcement of decision, *In re C.B.*, 8th Dist. Cuyahoga No. 112112, 2023-Ohio-620, released March 2, 2023, is hereby vacated. This opinion, issued upon reconsideration, is the court's journalized decision in this appeal. *See* App.R. 22(C); *see also* S.Ct.Prac.R. 7.01.

[2] The children's fathers are not parties to this appeal. Accordingly, we do not address the allegations relating to the fathers here.

Mother has engaged in treatment, she has been unable to maintain sobriety. The complaint further alleged that Mother has an untreated mental health diagnosis that interferes with her ability to provide adequate care for the children and that Mother has failed to engage C.D. in services to address his special needs.

{¶ 3} On May 6, 2021, attorneys E.C. ("Attorney E.C.") and D.B. ("Attorney D.B.") filed a notice of appearance as co-counsel for Mother. A case plan was developed for Mother and the children with the goal of reunification. Mother attended hearings on May 6, 2021, May 27, 2021 and July 8, 2021. Mother stipulated to the allegations of an amended complaint,[3] and on July 25, 2021, J.W., Jr. was adjudicated to be abused and neglected, C.B., C.D., A.D. and K.W. were adjudicated to be neglected and all five children were committed to the temporary custody of the agency. Mother attended a dispositional review hearing on August 17, 2021.

{¶ 4} On February 1, 2022, Attorney E.C. filed a motion to withdraw as Mother's counsel on the ground that Mother had "failed to fulfill contractual

---

[3] As amended, the complaint alleged, as it relates to Mother:

1. On March 20, 2021, Mother and J.W.[, Jr.] tested positive of Oxycodone and Benzodiazepines at the time of the child's birth.
2. Mother has substance abuse issues, * * * which she needs to engage in treatment to address. Mother must engage in case plan services in order to ensure her adequate parental care for the children.
3. Mother has a mental health diagnosis, specifically post-traumatic stress disorder, which interferes with her ability to provide adequate parental care for the children. Mother is not engaging in treatment for her mental health.
4. Mother fails to ensure that C.D.'s special needs are met. The child is diagnosed with a developmental disability, and Mother has failed to engage him in services.

financial obligations." On February 7, 2022, the juvenile court granted the motion to withdraw.[4]

{¶ 5} On February 13, 2022, the agency filed a motion to modify temporary custody to permanent custody as to all five children. A hearing on the motion was then scheduled for June 14, 2022.

{¶ 6} On February 28, 2022, the juvenile court entered an order appointing attorney J.K. ("Attorney J.K.") to serve as counsel for Mother. On April 6, 2022, the juvenile court entered an order appointing attorney P.D. ("Attorney P.D.") to serve as new counsel for Mother.[5] The record reflects that a copy of the order appointing Attorney P.D. was mailed to Mother at a Parma address, from which she had recently been evicted. Beginning on or about April 18, 2022, the orders mailed to Mother in each of the five cases were returned to the juvenile court with the notation, "not deliverable as addressed[;] unable to forward."

{¶ 7} The record reflects that Mother signed an amended case plan on April 6, 2022, which was filed with the court on April 13, 2022. Mother failed to appear at arraignment/pretrial hearings held on April 6, 2022, April 26, 2022 and May 17, 2022.

---

[4] Attorney D.B. was not referenced in the motion to withdraw. The dockets for several of the children's cases reflect that Attorney D.B. was "excluded" as a "case party" on May 27, 2021.

[5] It is unclear from the record what led to the reappointment of new counsel for Mother in April 2022. It does not appear from the record that Attorney J.K. appeared for or otherwise took any action on Mother's behalf in this case.

**{¶ 8}** Counsel for CCDCFS, Attorney P.D., counsel for P.B. (C.B.'s father), counsel for J.W., Sr. (father of A.W. and J.W., Jr.) and the guardian ad litem appeared for the permanent custody hearing on June 14, 2022. Also present were Terri Fulton, a CCDCFS child protection specialist and Stacy Huddleston, a CCDCFS sobriety, treatment and recovery teams family advocate, both of whom testified during the permanent custody hearing.

**{¶ 9}** Prior to the commencement of the hearing, counsel for P.B. requested that he be "excused" from the proceedings because he had not been successful in his attempts to communicate with P.B. regarding the case and, therefore, did not know "what his wishes are" or "if he has any concerns about this case" and could not "represent any wish that he might have." P.B.'s counsel explained that, in attempting to contact P.B., he had "used the addresses provided by [the agency]" and had attempted to call "the telephone numbers related to [P.B.]" that he had been given but that he had "never been able to make any contact with [P.B.] despite sending him letters and attempting to call him." No one objected, and the juvenile court granted counsel's request to withdraw from the representation of P.B.

**{¶ 10}** Mother's counsel, Attorney P.D., then requested a continuance of the permanent custody hearing on Mother's behalf, indicating that Mother was not present and stating, "I have not been able to have any contact with her either. I do not know her position." The agency objected to the continuance, setting forth its position as follows:

We have good service on the mother. The testimony elicited by my worker of record will be that the mother has not visited these children in the past two months and has not contacted the Agency.

And also additionally, the Agency hasn't been provided any information.

Mr. [P.D.] just said that he hasn't had any communication with his client, so we don't know if there are any exigent circumstances that led to her not being here today.

She certainly has never reached out to Children and Family Services, so on the basis of that we don't have any information that there's anything that would prevent the mother from showing up at Court today, so we would ask to go forward, your Honor.

Certainly this case has been pending for over a year.

{¶ 11} As to her position on the request for continuance, the children's guardian ad litem stated:

The only thing that I would ask is that this is the first time that we've appeared for trial. There haven't been any continuances that were prior requested, and that the case itself is pretty (inaudible), but other than that, I don't have anything further to say regarding support for a continuance.

{¶ 12} Without conducting any further inquiry or explaining the reasons for its decision, the juvenile court denied the motion for continuance, and the hearing proceeded on the agency's motion to modify temporary custody to permanent custody.

{¶ 13} The two CCDCFS witnesses were the only witnesses to testify at the permanent custody hearing. The children's guardian ad litem also set forth her recommendation on the record at the hearing.

{¶ 14} Attorney P.D. waived opening statement. He did not ask any questions of the agency's witnesses or the guardian ad litem and did not present any witness testimony or other evidence on Mother's behalf.

{¶ 15} In his closing, Attorney P.D. argued that the agency's request for permanent custody was "premature," that there was "still time on this case," that Mother had made "some case plan progress," that "she is seeing her kids" and "has participated in the case plan services" and that there is "still [an] opportunity for mom to turn the ship around and be more consistent." He requested that the juvenile court grant an extension of temporary custody.

{¶ 16} At the conclusion of the hearing, the juvenile court ordered that the parties submit proposed findings of fact and conclusions of law by June 22, 2022. The parties submitted proposed findings of fact and conclusions of law as ordered. On October 5, 2022, the juvenile court granted the agency's motion for permanent custody and terminated Mother's parental rights, incorporating the findings of fact submitted by the agency.

{¶ 17} Mother appealed, raising the following sole assignment of error for review:

> The trial court's denial of Appellant's request for a continuance was an abuse of discretion since no opportunity was made to contact the Appellant.

**Law and Analysis**

{¶ 18} The right to raise one's own child is "'an essential and basic civil right.'" *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, ¶ 67, quoting *In*

*re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997); *see also In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990) (a parent has a "'fundamental liberty interest' in the care, custody, and management" of his or her child), quoting *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). However, this right is not absolute. It is "'always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.'" *In re L.D.*, 2017-Ohio-1037, 86 N.E.3d 1012, ¶ 29 (8th Dist.), quoting *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979).

{¶ 19} Nevertheless, because termination of parental rights is "'the family law equivalent of the death penalty in a criminal case,'" *In re J.B.*, 8th Dist. Cuyahoga No. 98546, 2013-Ohio-1704, ¶ 66, quoting *In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, 776 N.E.2d 485, ¶ 14, it is "an alternative of last resort," *In re Gill*, 8th Dist. Cuyahoga No. 79640, 2002-Ohio-3242, ¶ 21. "[G]reat care must be taken to ensure that due process is used in parental termination proceedings," *In re Q.G.*, 170 Ohio App.3d 609, 2007-Ohio-1312, 868 N.E.2d 713, ¶ 12 (8th Dist.), and "parents 'must be afforded every procedural and substantive protection the law allows.'" *In re Hayes* at 48, quoting *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45 (6th Dist.1991); *see also In re Q.G.* at ¶ 10-11 ("'Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs. When the State moves to destroy

weakened familial bonds, it must provide the parents with fundamentally fair procedures.'"), quoting *Santosky* at 753-754.

{¶ 20} Juv.R. 23 governs continuances in juvenile court. It states that "[c]ontinuances shall be granted only when imperative to secure fair treatment for the parties." Loc.R. 35(C) of the Cuyahoga County Court of Common Pleas, Juvenile Division ("Juv.Loc.R. 35(C)"), further provides:

> No case will be continued on the day of trial or hearing except for good cause shown, which cause was not known to the party or counsel prior to the date of trial or hearing, and provided that the party and/or counsel have used diligence to be ready for trial and have notified or made diligent efforts to notify the opposing party or counsel as soon as he/she became aware of the necessity to request a postponement. This rule may not be waived by consent of counsel.

{¶ 21} The grant or denial of a motion to continue is a matter that is generally "'entrusted to the broad, sound discretion of the trial judge.'" *In re Ka.C.*, 8th Dist. Cuyahoga Nos. 102000, 102002, 102005, and 102006, 2015-Ohio-1158, ¶ 13, quoting *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981). A court abuses its discretion when its decision is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983); *In re Ka.C.* at ¶ 13. A decision is unreasonable if "'no sound reasoning process * * * would support that decision.'" *In re C.D.Y.*, 8th Dist. Cuyahoga No. 108355, 2019-Ohio-4987, ¶ 8, quoting *Baxter v. Thomas*, 8th Dist. Cuyahoga No. 101186, 2015-Ohio-2148, ¶ 21. A decision is arbitrary if it is made "'without consideration of or regard for facts [or] circumstances.'" *In re C.D.Y.* at ¶ 8, quoting *Black's Law Dictionary* 125 (10th Ed.2014).

{¶ 22} Where the granting of a continuance is necessary to allow a party a reasonable opportunity to prepare his or her case, the denial of a request for a continuance may violate a party's right to due process. *See, e.g., In re K.H.*, 8th Dist. Cuyahoga No. 111287, 2022-Ohio-2588, ¶ 67; *State v. Sowders*, 4 Ohio St.3d 143, 144, 447 N.E.2d 118 (1983); *see also In re R.S.*, 8th Dist. Cuyahoga No. 99562, 2013-Ohio-5576, ¶ 17, citing *In re A.C.*, 6th Dist. Lucas No. L-10-1025, 2010-Ohio-4933, ¶ 128. However, not every denial of a motion for continuance is a denial of due process. *In re C.W.*, 8th Dist. Cuyahoga No. 109219, 2020-Ohio-3189, ¶ 16.

{¶ 23} As the Ohio Supreme Court explained in *Unger*: "'There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.'" *Unger* at 67, quoting *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964); *see also In re I.N.*, 8th Dist. Cuyahoga No. 110067, 2021-Ohio-1406, ¶ 17; *In re A.W.*, 8th Dist. Cuyahoga No. 109239, 2020-Ohio-3373, ¶ 26. "Weighed against any potential prejudice to a [party] are concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." *Unger* at 67.

{¶ 24} When evaluating a request for a continuance, a court should consider all relevant factors, including the following:

> the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for

legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.

*Id.* at 67-68; *see also In re I.N.* at ¶ 17; *In re A.W.* at ¶ 27.  However, a court is not required to give particular weight to any one of these factors.  *In re K.H.* at ¶ 69.  In permanent custody cases, courts must also "be mindful of the best interests of the children and their need for stability and permanency" in considering a request for a continuance.  *In re I.N.* at ¶ 16.

{¶ 25} "'A parent facing termination of parental rights must exhibit cooperation and must communicate with counsel and with the court in order to have standing to argue that due process was not followed in a termination proceeding.'"  *In re A.W.* at ¶ 29, quoting *In re Q.G.*, 170 Ohio App.3d 609, 2007-Ohio-1312, 868 N.E.2d 713, at ¶ 12.  This is not a case in which Mother has never cooperated or communicated with the agency, counsel or the court.  To the contrary, although Mother did not appear for the permanent custody hearing on June 14, 2022 or for arraignment hearings held on April 6, 2022, April 26, 2022 and May 17, 2022, prior to that time, she had regularly appeared for court proceedings, including hearings on May 6, 2021, May 27, 2021, July 8, 2021 and August 17, 2021.  The record further reflects that Mother signed an amended case plan on April 6, 2022.[6]

---

[6] The amended case plan, which was filed with the juvenile court on April 13, 2022, states that Mother was evicted from her home on March 27, 2022 and "is now in need of housing."

At the hearing — after the juvenile court had denied Mother's motion for continuance — the CCDCFS child protection specialist testified that the agency had last

{¶ 26} As detailed above, the juvenile court entered an order appointing Attorney P.D. to serve as Mother's new counsel on April 6, 2022. It is unclear from the limited record before us whether Mother was aware that Attorney P.D. had been assigned to serve as her new counsel following the withdrawal of Attorney E.C. The record reflects that Mother was evicted from her Parma home in late March 2022. Copies of the orders assigning Attorney P.D. to serve as Mother's counsel in each of these cases were mailed to Mother at her Parma address after her eviction. Beginning on or about April 18, 2022, copies of these orders were returned to the juvenile court in each case as undeliverable. Although the record reflects that other documents were mailed to Mother, beginning on or about April 11, 2022, to a

"made contact" with Mother "at her mother's house, which is where she is reporting to live" at "the beginning of April." She stated that Mother then had a pending warrant for her arrest issued by the Parma Municipal Court on charges of attempted drug possession and theft. She further testified that Mother had attended a monthly sibling visit in April 2022. She stated that Mother was "given the information for the May visit" and that Mother had texted that she was going to attend the visit, but "never showed up."

The CCDCFS family advocate testified that she last spoke at length with Mother on April 12, 2022 at a sibling visit and that she last saw Mother on April 19, 2022 when Mother appeared for DNA testing of another child, who is not a part of this appeal. The family advocate stated that she usually communicated with Mother by text. In response to the question, "[W]hen was the last time that you requested mother to go do a drug screen," she responded, "[t]his morning." No inquiry was made as to the means by which the family advocate communicated this request to Mother (e.g., whether she called or texted Mother), at what time the family advocate made this request of Mother (the permanent custody hearing was scheduled for 10 a.m.) or whether Mother responded. No inquiry was made, and no explanation was provided, as to why the agency was requesting that Mother submit to a drug test on the date of the permanent custody hearing.

Cleveland address, it does not appear from the docket that the order appointing Attorney P.D. to serve as Mother's counsel was resent to Mother at another address.[7]

{¶ 27} Attorney P.D. moved for a continuance based on the fact that Mother had not appeared for the hearing and he had "not been able to have any contact" with Mother. No information was provided and no inquiry was made as to when, if at all, Attorney P.D. had attempted to contact Mother, the number of times he had attempted to contact Mother, the means by which he had attempted to contact Mother or what contact information he had for Mother. There is nothing in the record to suggest that anyone attempted to contact Mother the morning of the hearing, after she did not appear, to attempt to determine why Mother had failed to appear.

{¶ 28} No prior continuances of the hearing date had been requested. The juvenile court made no inquiry as to the length of continuance requested. Only two witnesses testified at the hearing, both of whom were agency employees. Besides counsel for the agency and Attorney P.D., the only other persons who appeared for the hearing were the guardian ad litem, counsel for P.B. (who then withdrew as counsel) and counsel for J.W., Sr. (who asked no questions, presented no evidence and, in closing argument, simply stated that he "would go along with the GAL's recommendation for temporary custody — for permanent custody"). Accordingly,

---

[7] Notices of the April 6, 2022 and April 26, 2022 arraignment hearings were also sent to Mother at the Parma address. Attorney P.D. was identified as counsel for Mother in entries summarizing the proceedings held on April 6, 2022, April 26, 2022 and May 17, 2022, which were sent to Mother at the Cleveland address.

it appears there would have been limited inconvenience to the parties and witnesses had a brief continuance been granted. Although there are some issues with the transcription of her statements, the guardian ad litem did not appear to oppose Mother's request for continuance.

{¶ 29} In this case, there are facts and circumstances in the record that suggest that granting a brief continuance may have been "imperative to secure fair treatment for the parties," Juv.R. 23, and supported by "good cause," Juv.Loc.R. 35(C). This is not a case in which it can be said that Mother was not prejudiced by the denial of her motion for continuance. Not only was Mother not present for the hearing, Attorney P.D. did not ask a single question of the agency's witnesses or the guardian ad litem and did not present any evidence on Mother's behalf. Further, it does not appear that the juvenile court considered timeliness in resolving the agency's motion to be a critical factor here. Although the permanent custody hearing was held on June 14, 2022, it was not until October 5, 2022 — more than three-and-one-half months later — that the juvenile court entered its ruling on the agency's motion to modify temporary custody to permanent custody.

{¶ 30} Based on the "unique" facts and circumstances here — of which *Unger* requires consideration — we find that the juvenile court abused its discretion in denying Mother's motion for continuance without conducting even a minimal inquiry to determine the facts necessary to evaluate the *Unger* factors prior to ruling on Mother's motion for continuance. *See Unger* at 67-68; *cf. In re Q.G.*, 170 Ohio App.3d 609, 2007-Ohio-1312, 868 N.E.2d 713, at ¶ 16-17 (juvenile court erred in

"simply proceed[ing]" with adjudicatory hearing in mother's absence, without making "additional inquiries" and taking "extra care to ensure [mother's] presence," where mother appeared at preliminary hearings and told her counsel that she did not have the financial resources to get to the adjudicatory hearing). We sustain Mother's assignment of error.

{¶ 31} Judgment reversed.  Case remanded to the juvenile court for further proceedings.

It is ordered that the appellant recover from the appellee the costs herein taxed.

The court finds that there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

MARY J. BOYLE, J., CONCURS;
MICHELLE J. SHEEHAN, J., DISSENTS (WITH SEPARATE OPINION)

MICHELLE J. SHEEHAN, J., DISSENTING:

{¶ 32} Respectfully, I dissent.

{¶ 33} Applying the factors set forth in *State v. Unger*, 67 Ohio St.2d 65, 423 N.E.2d 1078 (1981), I find the trial court acted within its discretion in denying appellant counsel's request to continue the permanent custody trial.

{¶ 34} When a request to continue a trial is made, the court is to consider the following factors:

> [T]he length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.

*Unger* at 67-68. The Supreme Court of Ohio instructed further that "'[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, *particularly in the reasons presented to the trial judge at the time the request is denied.*'" (Emphasis sic.) *Unger* at 67, quoting *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964).

{¶ 35} Here, the record indicates appellant was served with notice of the permanent custody trial held on June 14, 2022. Two months before the trial, she stopped visiting with the children and failed to attend three pretrial hearings conducted on April 6, April 26, and May 17, 2022. On the day of trial, her counsel requested a continuance after trial had commenced, without asking for a specific length for the continuance. Counsel could not explain appellant's absence, stating merely that he had been unable to have any contact with her and did not know her

position on the permanent custody matter. Because the circumstance giving rise to appellant's absence and the request of continuance was unknown, and remains unknown, it is impossible to determine, as part of the *Unger* analysis, whether appellant contributed to the circumstance and whether the reason for the request was legitimate.

{¶ 36} Further consideration of the *Unger* factors, including the limited statutory time (120 days) given to the agency to resolve the custody matter — the permanent custody motion had been pending for 116 days — as well as the resulting inconvenience to the witnesses, the opposing counsel, the GAL, and the court, indicates that the trial court justifiably denied the request for a continuance pursuant to *Unger,* 67 Ohio St.2d 65, 423 N.E.2d 1078. *See, e.g.*, *In re A.W.*, 8th Dist. Cuyahoga No. 109239, 2020-Ohio-3373; *In re C.W.*, 8th Dist. Cuyahoga No. 109219, 2020-Ohio-3189; and *In re S.R.*, 6th Dist. Ottawa No. OT-09-024, 2010-Ohio-3073. Appellant similarly fails to demonstrate she was entitled to a continuance under Juv.R. 23, which provides that "[c]ontinuances shall be granted only when imperative to secure fair treatment for the parties."

{¶ 37} Furthermore, regarding a request for a continuance on the day of trial, Loc.R. 35(C) of the Cuyahoga County Court of Common Pleas, Juvenile Division, provides:

> No case will be continued on the day of trial or hearing except for good cause shown, which cause was not known to the party or counsel prior to the date of trial or hearing, and provided that the party and/or counsel have used diligence to be ready for trial and have notified or made diligent efforts to notify the opposing party or counsel as soon as

he/she became aware of the necessity to request a postponement. This rule may not be waived by consent of counsel.

{¶ 38} Appellant fails to show "good cause" required by Loc.R. 35(C). "Generally, a trial court does not abuse its discretion in denying a motion for a continuance when a party fails to appear at trial without explanation and when there is no indication that the party would attend a later trial if the continuance was granted." *In re Kutcher*, 7th Dist. Belmont No. 02 BE 58, 2003-Ohio-1235, ¶ 29, citing *Heard v. Sharp*, 50 Ohio App.3d 34, 552 N.E.2d 665 (8th Dist.1988), syllabus. Without any explanations, the trial court was justified in assuming that appellant's absence was voluntary. *Id.* *See also In re T.B.*, 9th Dist. Summit No. 27334, 2014-Ohio-4040, ¶ 17 (the trial court did not abuse its discretion denying a continuance when the request was made orally on the day of trial and without demonstration of emergency or unforeseen circumstances).

{¶ 39} Furthermore, the court has rejected the claim that a denial of the request for a continuance violates a parent's due process right to participate in the hearing which, by itself, warrants a reversal. *In re C.M.*, 4th Dist. Athens Nos. 17CA16 and 17CA17, 2017-Ohio-9037, ¶ 44. Rather, appellant must demonstrate how she was prejudiced by the denial of the continuance before a prejudicial error can be found. *Id.* at ¶ 42, citing *State v. Broom*, 40 Ohio St.3d 277, 288, 533 N.E.2d 682 (1988) ("not every denial of a continuance constitutes a denial of due process"). *See also In re E.H.*, 4th Dist. Hocking No. 21CA6, 2022-Ohio-2417, ¶ 13. Appellant's brief lacks any demonstration of prejudice resulting from the trial

court's denial of her request for a continuance of the trial: she does not argue she would have presented certain evidence in her favor or questioned the witnesses differently, or otherwise explain how her presence at the trial would have changed the outcome of the case.

{¶ 40} While I recognize that biological parents have a constitutionally protected right to be present at a permanent custody hearing, *In re Sears*, 10th Dist. Franklin No. 01AP-715, 2002-Ohio-368, ¶ 11, "a parent facing termination of parental rights must exhibit cooperation and must communicate with counsel and with the court in order to have standing to argue that due process was not followed in a termination proceeding." *In re Q.G.*, 170 Ohio App.3d 609, 2007-Ohio-1312, 868 N.E.2d 713, ¶ 12 (8th Dist.). While biological parents have certain rights concerning their children, "'the focus of a permanent custody hearing and decision is not the parent's rights but rather the child's best interests.'" *In re J.H.*, 11th Dist. Lake No. 2012-L-126, 2013-Ohio-1293, ¶ 87, quoting *In re West*, 4th Dist. Athens No. 05CA4, 2005 Ohio 2977, ¶49. The trial court's decision here comports with "the Ohio General Assembly's intent to ensure the timely placement of children into a permanent home." *In re J.B.*, 8th Dist. Cuyahoga No. 98546, 2013-Ohio-1704, ¶ 116.

{¶ 41} "The grant or denial of a continuance is a matter that is entrusted to the broad, sound discretion of the trial judge." *Unger*, 67 Ohio St.2d at syllabus, 423 N.E.2d 1078. An abuse of discretion implies that court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). Under the circumstances of this case, the trial court acted

within its discretion in denying appellant's same-day request to continue the trial. Pursuant to the juvenile court's local rules, appellant had the burden to demonstrate good cause for a continuance on the day of trial and failed to do so. The court had no affirmative duty regarding appellant's burden to comply with the rules of the court. Furthermore, appellant fails to demonstrate the denial of the request prejudiced her case and warrants a reversal. For these reasons, I dissent.